[No. S155965. June 29, 2009.]

JOSE A. ARIAS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ANGELO DAIRY et al., Real Parties in Interest.

974

Counsel

California Rural Legal Assistance, Inc., Blanca A. Bañuelos and Michael L. Meuter for Petitioner.

Worksafe Law Center, M. Suzanne Murphy; The Impact Fund, Brad Seligman, Jocelyn Larkin; Asian Pacific American Legal Center, Julie A. Su, Yungsuhn Park; Legal Aid Foundation of Los Angeles, Anel Flores; Legal Aid Society—Employment Law Center, Matthew Goldberg; Neighborhood Legal Services of Los Angeles County, David Pallack, José Tello; The Watsonville Law Center, Dori Rose Inda; National Employment Law Project, Laura Moskowitz; California Rural Legal Assistance Foundation and Julia L. Montgomery for Garment Worker Center, Inquilinos Unidos and Maintenance Cooperation Trust Fund as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Barsamian, Saqui & Moody, Saqui & Raimondo, Michael C. Saqui; McCormick, Barstow, Sheppard, Wayte & Carruth and Anthony P. Raimondo for Real Parties in Interest.

Law Offices of Steven Drapkin, Steven Drapkin; O'Melveny & Myers, Scott H. Dunham, Ryan W. Rutledge; National Chamber Litigation Center, Inc., and Robin S. Conrad for Employers Group, California Employment Law Council, Chamber of Commerce of the United States of America and California Restaurant Association as Amici Curiae on behalf of Real Parties in Interest.

Opinion

**KENNARD, J.**—We hold that an employee who, on behalf of himself and other employees, sues an employer under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) for Labor Code violations must satisfy class action requirements, but that those requirements need not be met when an employee's representative action against an employer is seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.).

**I**

Jose A. Arias sued his former employer, Angelo Dairy, and others. In the first through sixth causes of action of the first amended complaint, plaintiff *on behalf of himself* alleged violations of the Labor Code, labor regulations, and an Industrial Welfare Commission wage order.

In the seventh through eleventh causes of action of the first amended complaint, plaintiff asserted claims *on behalf of himself as well as other current and former employees of defendants*. We summarize those causes of action below.

The seventh and eighth causes of action alleged breach of contract and breach of the warranty of habitability on the ground that defendants provided residential units in a defective and dangerous condition.

The ninth cause of action alleged violations of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), based on defendants' failures to credit plaintiff for all hours worked, to pay overtime wages, to pay wages when due, to pay wages due upon termination, to provide rest and meal periods, and to obtain written authorization for deducting or offsetting wages.

The tenth cause of action sought enforcement under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)[1] of penalties provided for in the Labor Code (Lab. Code, §§ 203, 226).

The eleventh cause of action alleged, under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.), that defendants had violated the Labor Code, labor regulations, and an Industrial Welfare Commission wage order by failing to pay all wages due, to provide itemized wage statements, to maintain adequate payroll records, to pay all wages due upon termination, to provide rest and meal periods, to offset proper amounts for employer-provided housing, and to provide necessary tools and equipment.

The trial court granted defendants' motion to strike the seventh through eleventh causes of action (brought on behalf of plaintiff and other employees) on the ground that plaintiff failed to comply with the pleading requirements for class actions. Plaintiff petitioned the Court of Appeal for a writ of mandate. That court held that the causes of action brought in a representative capacity alleging violations of the unfair competition law, but not the representative claims under the Labor Code Private Attorneys General Act of 2004, were subject to class action requirements. It issued a peremptory writ of mandate directing the trial court to issue a new order striking the representative claims alleged in the seventh through tenth causes of action, but not striking the eleventh cause of action. We granted plaintiff's petition for review.

---

[1] Unless otherwise indicated, all further statutory citations are to the Business and Professions Code.

## II

Plaintiff contends the Court of Appeal erred in holding that to bring representative claims (that is, claims on behalf of others as well as himself) under the unfair competition law, he must comply with class action requirements.[2] We disagree.

■ The unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." (§ 17200.) Before 2004, any person could assert representative claims under the unfair competition law to obtain restitution or injunctive relief against unfair or unlawful business practices. Such claims did not have to be brought as a class action, and a plaintiff had standing to sue even without having personally suffered any injury. (Former §§ 17203, 17204, added by Stats. 1977, ch. 299, § 1, p. 1202; *Kraus v. Trinity Management Services, Inc., supra*, 23 Cal.4th at p. 126, fn. 10; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 561 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; see *Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 680–681 [125 Cal.Rptr.2d 46].)

In 2004, however, the electorate passed Proposition 64, an initiative measure. Proposition 64 amended the unfair competition law to provide that a private plaintiff may bring a representative action under this law only if the plaintiff has "suffered injury in fact and has lost money or property as a result of such unfair competition" and "complies with Section 382 of the Code of Civil Procedure . . . ."[3] This statute provides that "when the question is one

---

[2] In a "representative action," the plaintiff seeks recovery on behalf of other persons. There are two forms of representative actions: those that are brought as class actions and those that are not. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 126, fn. 10 [96 Cal.Rptr.2d 485, 999 P.2d 718]; *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 129 [109 Cal.Rptr. 724].) A party seeking certification of a class action bears the burden of establishing that there is an ascertainable class and a well-defined community of interest among the class members. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) If the trial court grants certification, class members are notified that any class member may opt out of the class and that the judgment will bind all members who do not opt out. (Cal. Rules of Court, rule 3.766(d); see *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1083 [56 Cal.Rptr.3d 861, 155 P.3d 268]; *Fogel v. Farmers Group, Inc.* (2008) 160 Cal.App.4th 1403, 1421 [74 Cal.Rptr.3d 61].) A class action cannot be settled or dismissed without court approval. (Cal. Rules of Court, rules 3.769(a), 3.770(a).)

[3] Sections 17203 and 17204 currently provide, with the Proposition 64 amendments shown in italics and strikeout type, as follows:

"17203. Injunctive Relief—Court Orders

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or

of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Code Civ. Proc., § 382.) This court has interpreted Code of Civil Procedure section 382 as authorizing class actions. (*Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th at p. 913; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701].)

Plaintiff contends that because Proposition 64's amendment of the unfair competition law requires compliance only with "[s]ection 382 of the Code of Civil Procedure" (§ 17203; see fn. 3, *ante*), and because that statute makes no mention of the words "class action," his representative lawsuit brought under the unfair competition law need not comply with the requirements governing a class action.

At issue is whether, as amended by the voters' passage of Proposition 64, section 17203's language stating that to bring a representative action under the unfair competition law a private plaintiff must "compl[y] with Section 382 of the Code of Civil Procedure," imposes a requirement that the action be brought as a class action. To resolve the issue, we examine the statutory language to determine the intent of those who enacted it.

█ The general principles that govern interpretation of a statute enacted by the Legislature apply also to an initiative measure enacted by the voters. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].) Thus, our primary task here is to ascertain the intent of the

personal, which may have been acquired by means of such unfair competition. *Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.*"

"17204. Actions for Injunctions by Attorney General, District Attorney, County Counsel, and City Attorneys

"Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person ~~acting for the interests of itself, its members or the general public~~ *who has suffered injury in fact and has lost money or property as a result of such unfair competition.*"

electorate (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226]) so as to effectuate that intent (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350]).

We look first to the words of the initiative measure, as they generally provide the most reliable indicator of the voters' intent. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 804 [47 Cal.Rptr.3d 248, 139 P.3d 1196]; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning. (*People v. Leal* (2004) 33 Cal.4th 999, 1007 [16 Cal.Rptr.3d 869, 94 P.3d 1071]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) That, according to plaintiff, is true here.

A literal construction of an enactment, however, will not control when such a construction would frustrate the manifest purpose of the enactment as a whole. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126 [77 Cal.Rptr.3d 569, 184 P.3d 702]; *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927]; *Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1945 [59 Cal.Rptr.2d 72].) "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters. (E.g., *Professional Engineers in California Government v. Kempton, supra,* 40 Cal.4th at p. 1050; *Robert L. v. Superior Court, supra,* 30 Cal.4th at p. 901.)

A thorough review of the Voter Information Guide prepared by the Secretary of State for the November 2, 2004, election at which the voters enacted Proposition 64 leaves no doubt that, as discussed below, one purpose of Proposition 64 was to impose class action requirements on private plaintiffs' representative actions brought under the unfair competition law.

The official title and summary of Proposition 64, prepared by the state Attorney General, told the voters that the initiative measure "[r]equires private representative claims to comply with procedural requirements applicable to class action lawsuits." (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) official title and summary of Prop. 64, p. 38.) And the ballot measure summary, prepared by the Secretary of State, informed the voters that a "yes" vote meant that a "person pursuing [unfair competition law] claims on behalf of others would have to meet the additional requirements of class action lawsuits," while a "no" vote meant that a "person could bring such a lawsuit

without meeting the additional requirements of class action lawsuits." (*Id.*, ballot measure summary, Prop. 64, p. 6.) Similarly, the analysis by the Legislative Analyst told the voters that under then existing law, "persons initiating unfair competition lawsuits do not have to meet the requirements for class action lawsuits," but that passage of Proposition 64 would change that by imposing "the additional requirements of class action lawsuits" on a private person's action brought under the unfair competition law on behalf of others. (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) analysis by the Legislative Analyst of Prop. 64, pp. 38–39.)

■ In light of this strong evidence of voter intent, we construe the statement in section 17203, as amended by Proposition 64, that a private party may pursue a representative action under the unfair competition law only if the party "complies with Section 382 of the Code of Civil Procedure" to mean that such an action must meet the requirements for a class action. (See *Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1092, fn. 9.)

We turn now to the next issue—whether class action requirements must also be satisfied when an aggrieved employee seeks civil penalties for himself and other employees under the Labor Code Private Attorneys General Act of 2004 for an employer's alleged Labor Code violations.

## III

In September 2003, the Legislature enacted the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; Stats. 2003, ch. 906, § 2, eff. Jan. 1, 2004). The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. (Stats. 2003, ch. 906, § 1.)

■ Under this legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. (Lab. Code, § 2699, subd. (a).)[4] Of the civil penalties recovered, 75 percent goes to the Labor and

---

[4] An "aggrieved employee" is defined in the Labor Code Private Attorneys General Act of 2004 as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (Lab. Code, § 2699, subd. (c).)

Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." (Lab. Code, § 2699, subd. (i).)

Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3. (Lab. Code, § 2699, subd. (a).) That statute requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation. (*Id.*, § 2699.3, subd. (a).) If the agency notifies the employee and the employer that it does not intend to investigate (as occurred here), or if the agency fails to respond within 33 days, the employee may then bring a civil action against the employer. (*Id.*, § 2699.3, subd. (a)(2)(A).) If the agency decides to investigate, it then has 120 days to do so. If the agency decides not to issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may commence a civil action. (*Id.*, § 2699.3, subd. (a)(2)(B).)

Here, plaintiff's eleventh cause of action seeks civil penalties under the Labor Code Private Attorneys General Act of 2004 for himself and other employees of defendants for alleged violations of various Labor Code provisions, several labor regulations, and an Industrial Wage Commission wage order. Defendants challenge the Court of Appeal's holding here that, to bring this cause of action, plaintiff need *not* satisfy class action requirements.[5] The court relied on these four reasons: (1) Labor Code section 2699, subdivision (a), states that "[n]otwithstanding any other provision of law" an aggrieved employee may bring an action against the employer "on behalf of himself or herself and other current or former employees"; (2) similar language in former section 17204 of the Business and Professions Code, which authorized actions "upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public" (see fn. 3, *ante*), permitted a representative action that was not brought as a class action; (3) unlike the current version of the unfair competition law's section 17203 (see fn. 3, *ante*), the Labor Code Private Attorneys General Act of 2004 does not expressly require that representative actions comply with Code of Civil Procedure section 382; and (4) a private plaintiff suing under this act is essentially bringing a law enforcement action designed to protect the public.

Defendants and their amicus curiae, the National Chamber Litigation Center, Inc., contend that the Court of Appeal's statutory construction leads to "absurd" results, is not supported by the statute's legislative history, and

---

[5] Actions under the Labor Code Private Attorneys General Act of 2004 may be brought as class actions. (See *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1173 [78 Cal.Rptr.3d 572].) At issue here is whether such actions *must* be brought as class actions.

violates the due process rights of defendants as well as aggrieved employees not named as parties to the civil action. We address these arguments below.

### A. "Absurd Results" Claim

Defendants criticize the Court of Appeal's holding that a representative action seeking civil penalties under subdivision (a) of Labor Code section 2699, which is part of the Labor Code Private Attorneys General Act of 2004, need not satisfy class action requirements. According to defendants, that holding leads to absurd results. In support of their argument, defendants point to a difference in language between subdivision (a) and subdivision (g) of Labor Code section 2699.

Subdivision (a) of Labor Code section 2699 states that "[n]otwithstanding any other provision of law" an aggrieved employee may bring a representative action against the employer for civil penalties based on violations of Labor Code provisions that *expressly* provide for a civil penalty. In contrast, subdivision (g), which allows an aggrieved employee to bring a representative action against the employer to recover civil penalties for violations of any Labor Code provision that does *not* expressly provide for statutory penalties, does not contain subdivision (a)'s "[n]otwithstanding any other provision of law" language.

Defendants read the Court of Appeal's decision as holding that class action requirements do not apply to actions under Labor Code section 2699, subdivision (a) *only because* class action requirements are "provisions of law" and subdivision (a) says that it applies regardless of, or notwithstanding, "any other provision of law." Defendants then argue that because Labor Code section 2699, subdivision (g) does not contain subdivision (a)'s "[n]otwithstanding any other provision of law" language, it follows that actions under that subdivision must comply with class action requirements. According to defendants, to conclude that subdivision (g) actions must satisfy class action requirements but subdivision (a) actions need not is "absurd" and therefore the Court of Appeal's statutory construction must be wrong. We disagree.

Defendants' argument assumes that class action requirements apply generally to any form of representative action unless the Legislature affirmatively precludes their application by inserting "notwithstanding any other provision of law," or words to that effect, in the statute authorizing the representative action. This assumption is incorrect. For example, this court construed the unfair competition law, before its amendment in 2004, as authorizing representative actions that were not class actions (see, e.g., *Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 126, fn. 10; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 561) even though

that law contained no language affirmatively expressing a legislative intent to preclude application of class action requirements.

Moreover, there is a more reasonable and persuasive explanation for the Legislature's failure to include the words "notwithstanding any other provision of law," or similar language, in subdivision (g) of Labor Code section 2699. That subdivision says that no action may be brought for any violation of the Labor Code's posting, notice, filing, and reporting requirements, but the subdivision contains an exception for such requirements when they involve statutorily mandated payroll or workplace injury reporting. Given that structure—a general prohibition subject to a specific exception that in turn was tied to specific statutory requirements—the addition of the words "notwithstanding any other provision of law" would have made the entire provision ambiguous and confusing because those additional words could be read as being inconsistent with, and therefore nullifying, the express exception incorporating other provisions of law. An intent to avoid this potential confusion and possible misinterpretation, rather than an intent to impose class action requirements, is the likely explanation for the absence of the words "notwithstanding any other provision of law" in subdivision (g) of Labor Code section 2699.

Defendants also argue that if the "[n]otwithstanding any other provision of law" language in Labor Code section 2699, subdivision (a) exempts representative actions brought under the Labor Code Private Attorneys General Act of 2004 from class action requirements, it must also exempt those actions from all other provisions of law, including statutes of limitation and pleading requirements set forth in the Code of Civil Procedure. Not so. "The statutory phrase 'notwithstanding any other provision of law' has been called a ' "term of art" ' [citation] that declares the legislative intent to override all *contrary* law." (*Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13 [16 Cal.Rptr.3d 746], italics added.) Thus, by virtue of subdivision (a)'s "notwithstanding" clause, only those provisions of law that conflict with the act's provisions—not, as defendants contend, every provision of law—are inapplicable to actions brought under the act.

## B. *Legislative History Claim*

Defendants argue that the legislative history of the Labor Code Private Attorneys General Act of 2004 reveals a legislative intent that any lawsuit under the act be brought as a class action. Defendants point to statements in certain committee reports that an employer need not be concerned about future lawsuits that assert the same issues because "[a]n action on behalf of other aggrieved employees would be final as to those plaintiffs . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as

amended Apr. 22, 2003, p. 8; see Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 12, 2003, p. 6 ["Because there is no provision in the bill allowing for private prosecution on behalf of the general public, there is no issue regarding the lack of finality of judgments against employers, as there has been with respect to private [unfair competition law] actions."].)[6] Arguing that, as to aggrieved employees other than those named as parties, a judgment would be final only if the action were brought as a class action, defendants contend the statements in question show a legislative intent to apply class action procedures to actions brought under the Labor Code Private Attorneys General Act of 2004. We are not persuaded.

The above quoted comments from the committee reports were simply responses to a concern expressed by those opposing the proposed legislation that the proposed legislation would allow employees to sue as a class without satisfying class action requirements. Because the committee report comments do not refer to class actions, they are insufficient to support the conclusion that the Legislature intended to impose class action requirements on representative actions brought under the Labor Code Private Attorneys General Act of 2004.

### C. *Due Process Claim*

Citing the principle of statutory construction that when possible a statute must be construed to avoid constitutional infirmity (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 538 [79 Cal.Rptr.3d 370, 187 P.3d 86]; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 846–847 [123 Cal.Rptr.2d 40, 50 P.3d 751]), defendants urge us to construe the Labor Code Private Attorneys General Act of 2004 as requiring that all actions under that act be brought as class actions. Not to do so, defendants argue, would render the act unconstitutional as violating the due process rights not only of defendant employers but also of nonparty aggrieved employees who are not given notice of, and an opportunity to be heard in, a representative action that is not brought as a class action.

---

[6] We note that the preclusive effect of judgments depends not on whether the action is brought on behalf of the general public, but on whether those sought to be bound by a judgment are named parties, are in privity with named parties, or are members of a class certified under class action procedures. (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 468, pp. 1131–1132 [a person who is neither a party nor in privity with a party is not bound by a judgment in an action even if the person is vitally interested in and directly affected by the outcome of the action]; see also *Fireside Bank v. Superior Court, supra,* 40 Cal.4th at pp. 1078–1079.) In any event, the statements that defendants have quoted from the committee reports in question do not suggest that the Legislature intended to require that representative actions under the Labor Code Private Attorneys General Act of 2004 be brought as class actions.

■ Underlying defendants' arguments are concerns pertaining to the application of collateral estoppel, an aspect of the doctrine of res judicata. Collateral estoppel precludes relitigation of issues that were necessarily decided in prior litigation, but it operates only against those who were parties, or in privity with parties, to that prior litigation and who are thus bound by the resulting judgment. The party seeking the benefit of the doctrine, by contrast, need not have been a party to the earlier lawsuit. (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229] ["Only the party *against whom* the doctrine is invoked must be bound by the prior proceeding."].)

Unfairness may result from application of collateral estoppel when, for example, various plaintiffs in separate lawsuits against the same defendant assert claims presenting common issues. Because collateral estoppel may be invoked only against a party to the prior lawsuit in which the issue was determined, and because in our example the defendant would be a party to every lawsuit while each of the various plaintiffs would be a party in only one lawsuit, the defendant would in later lawsuits be bound by any adverse determination of the common issues, while none of the plaintiffs would be similarly bound by prior determinations in the defendant's favor. Thus, " '[o]ne plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success.' " (*Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1078, quoting *Premier Elec. Constr. Co. v. N.E.C.A., Inc.* (7th Cir. 1987) 814 F.2d 358, 362.) This process, which is now commonly referred to as "one-way intervention," is potentially unfair to the defendant, who could face the " 'terrors of an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated.' " (*Fireside Bank v. Superior Court, supra,* at p. 1080.) Because of this potential for injustice, "in dicta we have gone so far as to attribute to defendants a due process right to avoid one-way intervention." (*Id.* at p. 1083.)

Defendants here assert that unless the Labor Code Private Attorneys General Act of 2004 is construed as requiring representative actions under the act to be brought as class actions, defendants in those actions will be subjected to the unfairness flowing from one-way intervention, thereby violating their constitutional right to due process of law. We disagree.

■ As we will explain, a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 does not give rise to the due process concerns that defendants have expressed, because the judgment in such an action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding.

■ An employee plaintiff suing, as here, under the Labor Code Private Attorneys General Act of 2004, does so as the proxy or agent of the state's labor law enforcement agencies. The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves. (Stats. 2003, ch. 906, § 1 [Legislature's findings and declarations].) In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. (Lab. Code, § 2699, subds. (a), (f); see pp. 980–981, *ante.*) The employee plaintiff may bring the action only after giving written notice to both the employer and the Labor and Workforce Development Agency (Lab. Code, § 2699.3, subd. (a)(1)), and 75 percent of any civil penalties recovered must be distributed to the Labor and Workforce Development Agency (*id.,* § 2699, subd. (i)). Because collateral estoppel applies not only against a party to the prior action in which the issue was determined, but also against those for whom the party acted as an agent or proxy (7 Witkin, Cal. Procedure, *supra,* Judgments, § 462, p. 1122; see *Taylor v. Sturgell* (2008) 553 U.S. 880, ___ [171 L.Ed.2d 155, 128 S.Ct. 2161, 2173]; *Zaragosa v. Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73]; Rest.2d Judgments, § 41), a judgment in an employee's action under the act binds not only that employee but also the state labor law enforcement agencies.

■ Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government. The act authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations (Lab. Code, § 2699, subds. (a), (g)), and an action to recover civil penalties "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties" (*People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [141 Cal.Rptr. 20, 569 P.2d 125]). When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party. (Rest.2d Judgments, § 41, subd. (1)(d), com. d, p. 397.) Accordingly, with respect to the recovery of civil penalties, nonparty employees as well as the government are bound by the judgment in an action brought under the act, and therefore defendants' due process concerns are to that extent unfounded.

■ As defendants point out, there remain situations in which nonparty aggrieved employees may profit from a judgment in an action brought under the Labor Code Private Attorneys General Act of 2004. This is why:

Recovery of civil penalties under the act requires proof of a Labor Code violation (Lab. Code, § 2699, subds. (a), (f)), and for some Labor Code violations there are remedies in addition to civil penalties (see, e.g., Lab. Code, §§ 98.6 [lost wages and work benefits], 226.7 [one additional hour of pay]; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114 [56 Cal.Rptr.3d 880, 155 P.3d 284]). Therefore, if an employee plaintiff prevails in an action under the act for civil penalties by proving that the employer has committed a Labor Code violation, the defendant employer will be bound by the resulting judgment. Nonparty employees may then, by invoking collateral estoppel, use the judgment against the employer to obtain remedies other than civil penalties for the same Labor Code violations. If the employer had prevailed, however, the nonparty employees, because they were not given notice of the action or afforded any opportunity to be heard, would not be bound by the judgment as to remedies other than civil penalties. (See *Taylor v. Sturgell, supra,* 553 U.S. at p. ___ [128 S.Ct. at p. 2176].)

The potential for nonparty aggrieved employees to benefit from a favorable judgment under the act without being bound by an adverse judgment, however, is not unique to the Labor Code Private Attorneys General Act of 2004. It also exists when an action seeking civil penalties for Labor Code violations is brought by a government agency rather than by an aggrieved employee suing under the Labor Code Private Attorneys General Act of 2004. Because an action under the act is designed to protect the public, and the potential impact on remedies other than civil penalties is ancillary to the action's primary objective, the one-way operation of collateral estoppel in this limited situation does not violate the employer's right to due process of law. (See *People v. Pacific Land Research Co., supra,* 20 Cal.3d at pp. 18–20.)[7]

---

[7] We recognize that in *People v. Pacific Land Research Co., supra,* 20 Cal.3d at page 18, this court noted that the parties bringing the action—the Attorney General and a district attorney—were not members of the group of individuals they were representing. In an action brought under the Labor Code Private Attorneys General Action of 2004, by contrast, the aggrieved employee plaintiff brings the action "on behalf of himself or herself and other current or former employees" (Lab. Code, § 2699, subd. (a)), and thus *is* a member of the group being represented. By itself, however, the distinction between public representatives who are not members of the group they represent and employee plaintiffs who are members of the group is not controlling. The controlling considerations are that any direct financial benefit to those harmed by the employer's unlawful conduct is ancillary to the primary object of the action, and that a defendant employer is no more disadvantaged by the proceeding than if the action had been brought by a state labor law enforcement agency. (See *People v. Pacific Land, supra,* 20 Cal.3d at pp. 17, 19.)

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I concur in the judgment. I write separately because I disagree with the majority's nonliteral interpretation of Proposition 64 (Gen. Elec. (Nov. 2, 2004)), which forecloses a variety of representative actions the measure clearly permits. Unlike the majority, I do not believe we would frustrate the voters' intent by enforcing the measure according to its plain language.

The unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL), as amended by Proposition 64, requires persons who wish to pursue claims on others' behalf to "*compl[y] with Section 382 of the Code of Civil Procedure . . . .*" (Bus. & Prof. Code, § 17203, italics added.) The majority construes the italicized language "to mean that such an action must meet the requirements for a class action." (Maj. opn., *ante*, at p. 980.) The problem with this conclusion is that the UCL, even as amended by Proposition 64, does not refer to class actions. Instead, it refers to Code of Civil Procedure section 382 (section 382). Section 382, which also does not refer to class actions, long predates that modern procedural device. Borrowed from New York's 1848–1849 Field Code (see Comrs. on Practice and Pleadings, Code of Civ. Proc. of the State of N.Y. (1850) § 610, p. 249), the language of section 382 entered California law in 1850 with California's first civil practice act (Stats. 1850, ch. 142, § 14, p. 429) and was reenacted in 1872 with its current designation as part of our original Code of Civil Procedure. Since then, section 382 has been amended only once, in 1971 (Stats. 1971, ch. 244, § 12, p. 375), to delete a reference to compulsory joinder. The statute remains ancient in language and intent, without significant intervening legislative attention.

Section 382 actually codifies not class action procedure but the common law doctrine of virtual representation. (*Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833, 837 [198 P.2d 514].) Under the doctrine, a person who was not a party to an action was deemed to have been virtually represented, and thus bound by the judgment, if his or her interests had received adequate representation by a party.[1] (See, e.g., *Bernhard v. Wall*

---

[1] California's Code Commissioners, in recommending section 382 to the Legislature as part of the 1872 Code of Civil Procedure, offered the examples of an action by a joint association composed of many individuals, an action by one stockholder on behalf of all against a corporation to compel an accounting, an action by one person on behalf of many claiming title to property from a single source, and an action by one partner on behalf of others to redress an

(1921) 184 Cal. 612, 629 [194 P. 1040].) The modern law of class actions evolved out of virtual representation. In 1948, we held that the doctrine, as codified in section 382, provided courts with sufficient authority to use the class action procedural mechanism. (*Weaver v. Pasadena Tournament of Roses, supra*, at pp. 836–837.) Over time, encouraged by the adoption in 1966 of rule 23 of the Federal Rules of Civil Procedure, class actions multiplied and began to displace other types of multiparty representative actions. California courts, lacking any other statutory basis for class actions,[2] simply continued to cite section 382 as authority and, when specific guidance was required, looked to federal decisions applying rule 23. (E.g., *Green v. Obledo* (1981) 29 Cal.3d 126, 146 [172 Cal.Rptr. 206, 624 P.2d 256]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 708–709 [63 Cal.Rptr. 724, 433 P.2d 732].) Today, its history largely forgotten, section 382 is commonly *but inaccurately* described as setting out the requirements for class certification.[3] The majority adopts this shorthand description, as did the Attorney General and the Legislative Analyst in the ballot pamphlet. (See maj. opn., *ante*, at pp. 979–980, citing Voter Information Guide, Gen. Elec. (Nov. 2, 2004) official title and summary of Prop. 64, p. 38; *id.*, ballot measure summary, Prop. 64, p. 6; *id.*, analysis by the Legislative Analyst of Prop. 64, pp. 38–39.) In a non-UCL case I, too, have described the statute in the same way. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1092, fn. 9 [56 Cal.Rptr.3d 861, 155 P.3d 268].) The common shorthand, however, is not accurate. Even today, more remains of section 382 than just a makeshift citation for the proposition that California law authorizes class actions.

What remains of section 382 is best understood by reference to *Taylor v. Sturgell* (2008) 553 U.S. 880 [171 L.Ed.2d 155, 128 S.Ct. 2161] (*Taylor*), in which the United States Supreme Court comprehensively examined the federal courts' use of virtual representation, the common law doctrine section

---

indivisible injury to the partnership. (Code commrs., notes foll., Ann. Code Civ. Proc., § 382 (1st ed. 1872, Haymond & Burch, commrs. annotators) pp. 242–244.)

[2] The Legislature in 1970 filled this void only incompletely with the enactment of the Consumers Legal Remedies Act. (Civ. Code, § 1750 et seq.; see *id.*, § 1781.) Lacking further legislative guidance, the Judicial Council has adopted rules governing some aspects of class action procedure, such as notice, but not the standards for class certification. (See Cal. Rules of Court, rule 3.760 et seq.)

[3] Three of the criteria for virtual representation set out in section 382—common interest, numerosity and the impracticability of joinder—have found their way into the modern jurisprudence of class actions. (See Fed. Rules Civ.Proc., rule 23(a)(1)–(2), (b)(1)(B), 28 U.S.C.) But, as section 382 was never intended to codify class action procedure, it says nothing about other important requirements such as the existence of common questions of law, the typicality of claims, the ability of the named plaintiff to provide fair and adequate representation, the superiority of a class action over other methods of adjudication, the likely difficulties of managing a class action, and the requirement of notice. (See Fed. Rules Civ.Proc., rule 23(a)(3), (4), (b)(3), (b)(3)(D), (c)(2)(B), 28 U.S.C.)

382 embodies. *Taylor*'s basic holding is that a judgment's binding effect is to be determined not under common law doctrines but instead under the established rules of res judicata and collateral estoppel, which typically require that a person, to be bound, must have been made a party, received service of process, and had a full and fair opportunity to litigate. (*Taylor*, at p. ___ [128 S.Ct. at p. 2171].) Taken together, these rules form what the high court has called a general "rule against nonparty preclusion." (*Id.*, at p. ___ [128 S.Ct. at p. 2172].) To encourage clarity in determining the preclusive effect of judgments on nonparties, the high court instructed the lower federal courts not to use the term "virtual representation." (*Id.*, at p. ___ [128 S.Ct. at p. 2178].) In so doing, however, the court observed that to discard the term was "unlikely to occasion any great shift in actual practice" or any significant "change in outcomes" (*ibid.*) because the term encompasses six categories of valid, established exceptions to the rule against nonparty preclusion (*ibid.*; see also *id.*, at pp. ___–___ [128 S.Ct. at pp. 2172–2173]).

The propriety of any given representative action obviously depends on whether the nonparties assumed to be represented will in fact be bound by the judgment. Of the six categories of exceptions to the rule against nonparty preclusion identified in *Taylor, supra*, 553 U.S. 880, ___–___ [128 S.Ct. 2161, 2172–2173], three might well, but for today's decision, support non-class representative actions under the UCL: (1) preclusion because a person has agreed to be bound by the determination of issues in an action between others; (2) preclusion based on a variety of preexisting substantive legal relationships arising from the needs of property law, such as the relationships between preceding and succeeding owners of property, bailee and bailor, and assignee and assignor; and (3) preclusion because a nonparty was adequately represented by someone with the same interests who was a party, as in properly conducted class actions and in suits brought by trustees, guardians, and other fiduciaries. (*Taylor*, at pp. ___–___ [128 S.Ct. at pp. 2172–2173].)

*Taylor*'s third exception to the rule of nonparty preclusion—cases in which a nonparty was adequately represented, as in "*properly conducted class actions*" (*Taylor, supra*, 553 U.S. 880, ___ [171 L.Ed.2d 155, 128 S.Ct. 2161, 2172], italics added)—will undoubtedly comprise the vast majority of multi-party actions brought under the UCL. The consumers on whose behalf UCL actions are brought typically have no relationship with the representative plaintiff other than the fact that they purchased the same product or service from the defendant. Still, actions brought under the first (consent) and second (relationships based on property law) exceptions to the general rule of nonparty preclusion, and actions brought under the third exception by "trustees, guardians, and other fiduciaries" (*Taylor, supra*, at p. ___ [128 S.Ct. at p. 2173]), fall squarely within the language and intent of section 382, remain valid under federal law (see *Taylor*, at pp. ___–___ [128 S.Ct. at

pp. 2172–2173]), and might well be invoked as the basis for non-class-representative actions under the UCL. One can easily imagine, for example, an action by a homeowners' association on behalf of its members—a type of representative action California courts have consistently held to be proper under section 382 even without class certification. (E.g., *Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906–908 [176 Cal.Rptr. 886]; *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 793–794 [171 Cal.Rptr. 334].)

The majority, by simplistically construing Proposition 64's reference to "Section 382" (Bus. & Prof. Code, § 17203, as amended by Prop. 64) as requiring class certification in every instance, forecloses these other possibilities. I acknowledge that the practical difference between the majority's construction of Proposition 64 and my literal one is small. As I have explained, the vast majority of representative plaintiffs in UCL actions cannot hope to comply with section 382 except through class certification. Thus, my disagreement with the majority affects very few cases.

Nevertheless, strict fidelity to the language of voter initiatives is important. The specific language of an initiative measure typically represents " 'a delicate tightrope walk designed to induce voter approval . . .' " (*Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 930 [70 Cal.Rptr.3d 382, 174 P.3d 200], quoting *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1152 [128 Cal.Rptr.2d 844])—a balance that judges too easily upset by reading their own policy preferences into a measure's language. Thus, "the initiative power is strongest when courts give effect to the voters' formally expressed intent . . . ." (*Ross, supra,* at p. 930.) The majority's only justification for giving Proposition 64 a nonliteral interpretation is that the voters were told—albeit not in the text of the statute on which they were asked to vote—that the measure would compel representative plaintiffs to meet the requirements of class actions. (See maj. opn., *ante,* at pp. 979–980, citing Voter Information Guide, *supra,* official title and summary of Prop. 64, p. 38; *id.,* ballot measure summary, Prop. 64, p. 6; *id.,* analysis by the Legislative Analyst of Prop. 64, pp. 38–39.) The majority reasons that "[a] literal construction of an enactment . . . will not control when such a construction would frustrate the manifest purpose of the enactment as a whole." (Maj. opn., *ante,* at p. 979.) I agree with the principle but not its application. In this case, to interpret Proposition 64 literally would *not* frustrate the voters' intent, given the expected rarity in UCL cases of constitutionally permissible representative actions other than class actions. To prefer language in ballot pamphlets to the formal, operative text of an initiative renders the initiative process susceptible to bait-and-switch tactics. To do so even once without the plainest compulsion sets a potentially dangerous precedent.

Accordingly, I cannot join the majority in construing Proposition 64 according to its subjective, court-declared "spirit" rather than its "letter" (maj. opn., *ante*, at p. 979) without a better reason to believe the voters did not really intend to be bound by language they voted to enact. Nevertheless, I agree with the majority that the Court of Appeal correctly struck plaintiff's representative claims under the circumstances of this case because plaintiff cannot otherwise "compl[y] with Section 382" (Bus. & Prof. Code, § 17203) and, thus, satisfy Proposition 64.