Filed 11/15/22 Quinn v. Dolgen California CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LATISHA R. QUINN,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DOLGEN CALIFORNIA, LLC,<br><br>    Defendant and Appellant. | G060015<br><br>(Super. Ct. No. 30-2018-01015215)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kirk H. Nakamura, Judge. Reversed and remanded with directions.

McGuire Woods, Matthew C. Kane, Amy E. Beverlin and Sabrina A. Beldner for Defendant and Appellant.

Robins Kaplan and Glenn A. Danas; James Hawkins, James R. Hawkins, Gregory Mauro and Michael Calvo for Plaintiff and Respondent.

\*        \*        \*

INTRODUCTION

Latisha R. Quinn brought a representative action against her former employer, Dolgen California, LLC (Dolgen) in which she sought the recovery of penalties under the Private Attorney General Act of 2004 (PAGA) (Labor Code, § 2698 et seq.) for several Labor Code violations allegedly suffered by her and other employees. Following *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and its progeny, the trial court denied Dolgen's motion to compel the arbitration of the "individual" portion of Quinn's PAGA claim for Labor Code violations she herself had allegedly suffered. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 88 (*Kim*) [California "[a]ppellate courts have rejected efforts to split PAGA claims into individual and representative components"].)

During the pendency of this appeal, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __, __ [142 S.Ct. 1906, 1924] (*Viking*), in which it held that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts the rule of *Iskanian* "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." The *Viking* court further held an employer is entitled to enforce an arbitration agreement "insofar as it mandated arbitration of [the employee]'s individual PAGA claim." (*Viking, supra*, at p. 1925].)

In light of *Viking*, we reverse the order denying Dolgen's motion to compel arbitration and remand with directions to the trial court to enter a new order requiring Quinn to arbitrate her individual PAGA claim.

FACTS AND PROCEDURAL HISTORY

I.

QUINN'S PAGA CLAIM

Quinn filed a lawsuit against Dolgen in which she solely sought the recovery of penalties under PAGA for alleged Labor Code violations suffered by her and other employees. In her second amended complaint, Quinn alleged Dolgen violated various provisions of the Labor Code by failing to pay overtime wages, minimum wages, wages earned and owned upon separation from employment, and by failing to indemnify for necessary business expenses. Quinn, as an aggrieved employee, sought "penalties under Labor Code 2698, et seq. on behalf of the general public as private attorney general and all other aggrieved employees as well as wages due and owing under Labor Code § 558 pursuant to the provision of Labor Code § 2699.5."

II.

DOLGEN'S MOTION TO COMPEL ARBITRATION

Dolgen filed a motion to compel "individual arbitration of [Quinn]'s claims and stay proceedings pending ruling on motion and completion of court-ordered arbitration." In support of the motion, Dolgen produced evidence that on September 15, 2014, prior to Quinn's first day of her first term of employment with Dolgen (September 17, 2014 until May 8, 2015), and then again prior to the first day of work of her second term of employment on December 12, 2016, Quinn electronically signed the Dollar General Employee Arbitration Agreement (the arbitration agreement) which stated in part:

"Dolgen California LLC ('Dollar General') has a process for resolving employment related legal disputes with employees that involves binding arbitration. This Dollar General Employee Arbitration Agreement ('Agreement') describes that process

3

and constitutes a mutually binding agreement between you and Dollar General, subject to opt out rights described at the end of this Agreement.

"You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.

"Class and Collective Action Waiver: *You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum*. You and Dollar General may bring individual claims or multi-plaintiff claims joining together not more than three plaintiffs, provided that the claims are not asserted as a class, collective or representative action. Non-representative, multi-plaintiff arbitrations (up to the three-plaintiff limit) may only be filed if each of the plaintiff's claims: (1) arises out of the same transaction, occurrence, or series of transactions or occurrences; (2) arises out of the same work location; and (3) presents a common question of law or fact. A challenge to a multi-plaintiff action can be initiated by any party by filing a motion to dismiss or sever one or more parties. The arbitrator shall rule upon the motion to dismiss or sever based upon the standards set forth in this Paragraph. NOTE: This waiver does not apply to claims under the National Labor Relations Act." (Bold and underlining omitted, italics added.)

The arbitration agreement also contained a severability clause, stated: "If any parts of this Agreement are found to be invalid, illegal, or unenforceable, the validity, legality, and/or enforceability of the remaining provisions will not be affected by that

4

decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken."

Quinn filed an opposition to Dolgen's motion, in which she argued that PAGA claims cannot be subjected to arbitration and that splitting any portion of Quinn's PAGA claim would impermissibly split the action into arbitrable and nonarbitrable claims.

## III.

### THE TRIAL COURT DENIES THE MOTION TO COMPEL ARBITRATION

The trial court denied Dolgen's motion to compel arbitration. In its minute order, the court explained that, although Quinn did not dispute having executed the arbitration agreements, "California authority indicates a 'predispute agreement to arbitrate PAGA claims is not enforceable without the State's consent.'" Citing *Iskanian, supra*, 59 Cal.4th at page 384, the trial court explained the FAA is inapplicable to PAGA claims "'because it is not a dispute between an employer and an employee arising out of their contractual relationship [but] a dispute between an employer and the state,'" and PAGA waivers are therefore unenforceable. The trial court further stated that an "'individual PAGA claim' does not exist" and "'[a] single representative PAGA claim cannot be split into an arbitrable individual claim and a nonarbitrable representative claim.'"

Dolgen appealed. After the United States Supreme Court issued its decision in *Viking, supra*, 142 S.Ct. 1906, we invited the parties to file supplemental letter briefs addressing the impact of *Viking* and its progeny on this appeal; both Quinn and Dolgen filed supplemental letter briefs addressing *Viking*.

5

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"An order denying a motion to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) ""'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.''" [Citation.]" (*Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 747.)

Here, the relevant facts to our review are undisputed. As pointed out by the trial court, Quinn acknowledges she signed the arbitration agreements in question. The court's order granting the motion to compel was based on the application of the holdings of *Iskanian* and its progeny and thus is based on a matter of law which we review de novo.

### II.

#### PAGA OVERVIEW AND *ISKANIAN, SUPRA*, 59 CAL.4TH 348

"In September 2003, the Legislature enacted [PAGA]. The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. [Citation.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

6

"A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties." (*Kim, supra*, 9 Cal.5th at p. 81.) "An aggrieved employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] Every PAGA action is 'a dispute between an employer and the *state*.'" (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 74, quoting, inter alia, *Iskanian, supra*, 59 Cal.4th at p. 386.)

In a PAGA action, "the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by [LWDA]." (*Arias, supra*, 46 Cal.4th at p. 986.) Civil penalties a PAGA plaintiff may recover on the state's behalf, therefore, are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. (*Iskanian, supra*, 59 Cal.4th at p. 381.) "An action under PAGA '"is fundamentally a law enforcement action"' and relief is '"designed to protect the public and not to benefit private parties."' [Citation.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.'" (*Moniz v. Adecco USA, Inc., supra*, 72 Cal.App.5th at p. 74.) "Only an 'aggrieved employee' has standing to bring a civil action under PAGA. (Labor Code, § 2699, subd. (a).) An 'aggrieved employee' is 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' (Labor Code, § 2699, subd. (c).)" (*Ibid.*)

In *Iskanian, supra*, 59 Cal.4th at page 360, the Supreme Court held, inter alia, "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." The Supreme Court further held "the FAA's goal of promoting arbitration as a

7

means of private dispute resolution does not preclude our Legislature from deputizing employees to prosecute Labor Code violations on the state's behalf. Therefore, the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." (*Ibid.*)

## III.

### THE UNITED STATES SUPREME COURT OVERRULES A PORTION OF *ISKANIAN, SUPRA*, 59 CAL.4TH 248 IN *VIKING, SUPRA*, 142 S.CT. 1906

After the trial court denied Dolgen's motion to compel arbitration, and while Dolgen's appeal from the court's order was pending, the United States Supreme Court issued its decision in *Viking, supra*, 142 S.Ct. at page 1913 to address whether the FAA preempts "a rule of California law that invalidates contractual waivers of the right to assert representative claims under [PAGA]."

In *Viking*, the parties had entered into an employment arbitration agreement containing a waiver provision prohibiting the parties from, inter alia, bringing any dispute as a representative PAGA action. (*Viking, supra*, 142 S.Ct. at pp. 1915-1916, 1924.) The United States Supreme Court noted that under *Iskanian*, such a provision was invalid if "construed as a wholesale waiver of PAGA claims," and concluded that *Iskanian's* holding on that point was not preempted by the FAA. (*Id*. at p. 1917.)

The *Viking* court's analysis continued to address the severability clause in the parties' arbitration agreement which provided that, in the event the waiver provision was invalid in some respect, "any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'" (*Viking, supra*, 142 S.Ct. at p. 1924.) The *Viking* court explained that, because of the severability provision, the employer was entitled to enforce the parties' agreement "insofar as it mandated arbitration of [the employee]'s individual

8

PAGA claim,"[1] but the lower courts had "refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims." (*Id.* at p. 1925.) The court observed California courts followed "a secondary rule" established in *Iskanian* that "invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Id.* at pp. 1916-1917.)

The *Viking* court reversed the lower court's order denying the employer's motion to compel and explained: "[T]he FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. This holding compels reversal in this case. . . . Under our holding, that rule is preempted, so [the employer] is entitled to compel arbitration of [the employee]'s individual claim." (*Viking, supra*, 142 S.Ct. at pp. 1924-1925; *id.* at pp 1916-1917.)

---

[1] The *Viking* court explained its use of the relevant terminology as follows:

"PAGA's unique features have prompted the development of an entire vocabulary unique to the statute, but the details, it seems, are still being worked out. An unfortunate feature of this lexicon is that it tends to use the word 'representative' in two distinct ways, and each of those uses of the term 'representative' is connected with one of *Iskanian*'s rules governing contractual waiver of PAGA claims.

"In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State. But PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees. In the first sense, "'every PAGA action is . . . representative"' and '[t]here is no individual component to a PAGA action,' [citation], because every PAGA claim is asserted in a representative capacity. But when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees. For purposes of this opinion, we will use 'individual PAGA claim' to refer to claims based on code violations suffered by the plaintiff. And we will endeavor to be clear about how we are using the term 'representative.'" (*Viking, supra*, 142 S.Ct. at p. 1916.)

## IV.

### WE MUST REVERSE THE ORDER DENYING THE MOTION TO COMPEL ARBITRATION IN LIGHT OF *VIKING, SUPRA*, 142 S.CT. 1906

Here, there is no dispute the parties entered into an arbitration agreement on two separate occasions containing the same relevant provisions. Like the parties' arbitration agreement in *Viking*, the arbitration agreements in the instant case contain a provision prohibiting the parties from asserting any representative action claims in any arbitration or in any other forum. As discussed *ante*, under both *Iskanian* and *Viking*, that waiver provision is invalid to the extent it is "a wholesale waiver of PAGA claims." (*Viking, supra*, 142 S.Ct. at p. 1925.)

Like the agreement in *Viking*, the arbitration agreements in the instant case contain a severability provision. That severability provision provides that if any part of the arbitration agreement is found to be invalid, illegal, or unenforceable, "the validity, legality, and/or enforceability of the remaining provisions will not be affected by that decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken."

Contrary to Quinn's argument in a supplemental letter brief, the language of the instant severability provision is indistinguishable in its effect from that of the language contained in the severability provision in *Viking*. The *Viking* court described the severability provision in the arbitration agreement before it as providing "if any 'portion' of the waiver [in the parties' arbitration agreement] remained valid, it would be 'enforced in arbitration.'" (*Viking, supra*, 142 S.Ct. at p. 1916.)

Given the invalidity and unenforceability of representative action claim waivers under *Viking* and *Iskanian*, the severability provision in the instant arbitration agreements applies to strike, as relevant in this appeal, the part of the "Class and Collective Action Waiver" provision which purports to require Quinn to waive the right to bring a representative action in arbitration or in any other forum. As so modified, the

10

arbitration agreement requires arbitration, "with the exception of certain excluded claims described below," of "any legal claims or disputes . . . arising out of [Quinn's] employment with [Dolgen] or termination of employment with [Dolgen]." The modified arbitration agreement does not identify PAGA claims as excluded claims. As the rule against splitting PAGA actions into individual and nonindividual claims for purposes of enforcing arbitration agreements is preempted by the FAA, Dolgen is entitled to enforce the arbitration agreement to mandate arbitration of Quinn's individual PAGA claim in this case. (*Viking, supra*, 142 S.Ct. at p. 1924.) We therefore reverse the order denying the motion to compel arbitration of that claim.

In a supplemental letter brief, Dolgen argues that we should dismiss Quinn's nonindividual/representative PAGA claim left after her individual PAGA claim is compelled to arbitration in light of the penultimate paragraph of the *Viking* majority opinion, stating: "The remaining question is what the lower courts should have done with [the employee]'s non-individual claims. Under our holding in this case, those claims may not be dismissed simply because they are 'representative.' *Iskanian's* rule remains valid to that extent. But as we see it, PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. [Citation.] When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, 9 Cal.5th, at [p.] 90 ('PAGA's standing requirement was meant to be a departure from the "general public" . . . standing originally allowed' under other California statutes). As a result, [the employee] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Viking, supra*, 142 S.Ct. at p. 1925.)

11

We do not need to address the fate of Quinn's nonindividual/representative PAGA claim because our review in this matter is limited to the trial court's order denying Dolgen's motion to compel arbitration which, for the reasons we have discussed, is reversed. There was no motion to dismiss the nonindividual/representative PAGA claim filed in or decided by the trial court, and so that issue is not before this court at this time.

## DISPOSITION

The order is reversed and the matter is remanded with directions that the trial court enter a new order requiring Quinn to arbitrate her individual PAGA claim. In the interest of justice, no party shall recover costs on appeal.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.