Filed 7/21/21  In re C.R. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.R.,<br><br>on Habeas Corpus. | H047991<br>(Santa Clara County<br>Super. Ct. Nos. C2000522,<br>C9937403) |

## I.    INTRODUCTION

As in the companion case we filed today, *In re Guice* (H047989) (*Guice*), this case asks us to decide whether the regulations adopted by the California Department of Corrections and Rehabilitation (CDCR) are " 'consistent and not in conflict with' " the constitutional provision mandating nonviolent parole consideration that was enacted by voters through their approval of Proposition 57.  (*In re Gadlin* (2020) 10 Cal.5th 915, 926 (*Gadlin*).)  The initiative measure amended the California Constitution to provide that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."  (Cal. Const., art. I, § 32, subd. (a)(1).)[1]  Section 32 does not define the phrase "convicted of a nonviolent felony offense."

Section 32 directs CDCR to "adopt regulations in furtherance of these provisions" and to "certify that these regulations protect and enhance public safety."  (§ 32(b).)  As

---

[1] We use "section 32" to refer to article I, section 32 of the California Constitution generally.  We use "section 32(a)(1)" to specify subdivision (a)(1) of section 32, and so on.

1

relevant here, the regulations CDCR adopted in furtherance of section 32 exclude from nonviolent parole consideration any inmate who "is currently serving a term of life with the possibility of parole for a 'violent felony.' " (Cal. Code Regs., tit. 15, §§ 3495, subd. (a)(3), 3496, subd. (a).)

Petitioner C.R.[2] challenges CDCR's regulations, contending that they are contrary to section 32 and electoral intent. Petitioner argues that under section 32, he is entitled to nonviolent parole consideration because he has "completed the full term for his primary offense."

As we explained in *Guice*, the Courts of Appeal have reached different conclusions on the meaning of section 32 as applied to mixed-offense inmates like petitioner—inmates who are currently convicted of both nonviolent and violent felony offenses and are currently serving a term for a violent felony offense.

In *In re Mohammad* (2019) 42 Cal.App.5th 719 (*Mohammad*), review granted February 19, 2020, S259999, the court held that CDCR's regulations improperly exclude mixed-offense inmates from nonviolent parole consideration because "under [section 32's] plain meaning," an individual "who is serving an aggregate sentence for more than one conviction will be eligible for an early parole hearing if one of those convictions was for 'a' nonviolent felony offense." (*Id.* at p. 726.)

In *In re Douglas* (2021) 62 Cal.App.5th 726 (*Douglas*), in contrast, the court upheld CDCR's regulations excluding mixed-offense inmates from nonviolent parole consideration because a literal interpretation of section 32(a)(1) "would lead to absurd results the voters did not intend." (*Douglas*, *supra*, at p. 729.) Justice Robie concurred in *Douglas*, concluding that section 32(a)(1) was ambiguous as applied to mixed-offense inmates and construing section 32(a)(1) to mean that an individual convicted of *one* violent felony offense that was designated as the primary offense shall be eligible for

---

[2] Petitioner has requested that we refer to him by his initials. We hereby grant petitioner's request.

parole consideration once the individual has served the full term for his or her primary offense. (*Douglas*, *supra*, at p. 735 (conc. opn. of Robie, J.).)

In *In re Viehmeyer* (2021) 62 Cal.App.5th 973 (*Viehmeyer*), based on section 32(a)'s language, the court held that "where a defendant is convicted of both a violent felony and a nonviolent felony, and the nonviolent felony is the primary offense for purposes of sentencing, the defendant is not entitled to early parole consideration under section 32(a) after completing the full term for the primary offense if he or she is still serving a term for the violent offense." (*Viehmeyer*, *supra*, at p. 978.)

And most recently, in *In re Ontiveros* (2021) 65 Cal.App.5th 899 (*Ontiveros*), the court "join[ed] *Viehmeyer* and *Douglas* in disagreeing with *Mohammad*'s conclusion that an inmate serving a determinate sentence for both violent and nonviolent convictions is entitled to early parole consideration under Proposition 57" because "[e]ven accepting *Mohammad*'s position that the language of Proposition 57 unambiguously applies to such inmates, such application would lead to the absurd result that an inmate convicted of a violent offense and several nonviolent offenses would be entitled to *earlier* parole consideration than an inmate convicted of only the violent offense." (*Id.* at pp. 902-903.)

Although section 32 clearly mandates nonviolent parole consideration for individuals convicted solely of nonviolent offenses, the fact that the provision does not define the phrase, "convicted of a nonviolent felony offense," renders it "reasonably susceptible of more than one meaning" when applied to mixed-offense inmates. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 (*Arias*).) Thus, mindful that "our primary task here is to ascertain the intent of the electorate" (*id.* at pp. 978-979), we believe the appropriate course is to examine Proposition 57's ballot materials in order to determine the voters' intent and whether CDCR's regulations "constitute a reasonable interpretation of the requirement . . . that '[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense' " (*Gadlin*, *supra*, at p. 934).

Under the California Supreme Court's guidance in *People v. Gadlin*, *supra*, 10 Cal.5th 915 and *People v. Valencia* (2017) 3 Cal.5th 347 (*Valencia*), based on Proposition 57's text and the ballot materials as a whole, we conclude that CDCR's regulations excluding mixed-offense inmates who are currently serving an indeterminate life term for a violent felony offense from nonviolent parole consideration are "a reasonable interpretation" of section 32(a) (*Gadlin*, *supra*, 10 Cal.5th at p. 934). Accordingly, we deny the petition for writ of habeas corpus.

## II.    PROCEDURAL BACKGROUND

In 2000, petitioner was convicted of pandering a minor under the age of 16 (Pen. Code, § 266i, subd. (b)), two counts of lewd and lascivious acts on a child under the age of 14 (*id.*, § 288, subd. (a)), pimping a minor under the age of 16 (*id.*, § 266h, subd. (b)), and pimping (*id.*, § 266h, subd. (a)). Various sentence enhancement allegations were also found true.

On remand from this court for resentencing, the superior court sentenced petitioner under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) to an aggregate term of 105 years to life, comprised of 25 years to life for each offense except pimping plus five years for a prior serious felony conviction (*id.*, § 667, subd. (a)). The court imposed a concurrent 25-year-to-life term for pimping. The court selected the term imposed for pandering a minor under the age of 16 as the principal term and awarded petitioner 1,463 days of custody credit.

In 2018, CDCR denied petitioner's request for nonviolent parole consideration because he did not qualify as a nonviolent offender under CDCR's regulations as he was serving an indeterminate life term for a violent felony offense.[3] (See Cal. Code Regs., tit. 15, § 3495, subd. (a)(3).)

---

[3] CDCR also denied petitioner's request for nonviolent parole consideration under its regulation excluding inmates "convicted of a sexual offense that currently requires or (continued)

Petitioner filed a petition for writ of habeas corpus in the superior court, contending that he is entitled to parole consideration under Proposition 57. In January 2020, the court denied the petition because "only nonviolent offenders are eligible for Proposition 57 early parole consideration."

In March 2020, petitioner petitioned this court for a writ of mandate or prohibition, contending that he is entitled to Proposition 57 parole consideration because he has "serv[ed] the full term of his nonviolent offense." After we received informal briefing, we deemed the petition a petition for a writ of habeas corpus and ordered CDCR to show cause why petitioner is not entitled to relief. The Attorney General filed a return and petitioner filed a traverse through appointed counsel.

### III.    DISCUSSION

**A.    *Proposition 57 and Section 32***

In November 2016, the electorate approved Proposition 57, the Public Safety and Rehabilitation Act of 2016. (*Gadlin*, *supra*, 10 Cal.5th at p. 919.) Among other enactments, the initiative amended article I of the California Constitution by adding section 32. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 3, p. 141.)

Section 32(a)(1) provides: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." "Primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (§ 32(a)(1)(A).) The provision states that it was "enacted to enhance public safety, improve rehabilitation, and

---

will require registration as a sex offender." (Former Cal. Code Regs., tit. 15, § 3496, subd. (b).) The California Supreme Court held the regulation invalid in *Gadlin* (*Gadlin*, *supra*, 10 Cal.5th at p. 920), and CDCR's regulations no longer exclude inmates from nonviolent parole consideration based solely on a previous or current conviction of a registrable sex offense (see Cal. Code Regs., tit. 15, § 3496).

avoid the release of prisoners by federal court order," and directs CDCR to "adopt regulations in furtherance of these provisions" and "certify that these regulations protect and enhance public safety." (§ 32(a), (b).)

**B.    *CDCR'S Regulations***

As relevant here, the regulations CDCR adopted in furtherance of section 32 provide that "[a]n 'indeterminately-sentenced nonviolent offender,' as defined in subsection 3495(a), shall be eligible for a parole consideration hearing by the Board of Parole Hearings." (Cal. Code Regs., tit. 15, § 3496, subd. (a).) Section 3495, subdivision (a) excludes from its definition of " 'indeterminately-sentenced nonviolent offender' " any inmate who "is currently serving a term of life with the possibility of parole for a 'violent felony.' " (*Id.*, § 3495, subd. (a)(3).) The regulations define " 'violent felony' " as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code."[4] (*Id.*, § 3495, subd. (c)).

**C.    *Standard of Review and Principles of Interpretation***

When evaluating the validity of a regulation, "we first ask whether the regulation is ' "consistent and not in conflict with" ' the provision that authorizes it. [Citation.] We then inquire whether the regulation is reasonably necessary to effectuate the purpose of the authorizing law. [Citations.] Our task as a reviewing court ' " 'is to decide whether the [agency] reasonably interpreted [its] mandate.' " ' " (*Gadlin*, *supra*, 10 Cal.5th at p. 926.) The validity of a state agency's regulation is presumed, and the party challenging the regulation must show its invalidity. (*Ibid.*) " ' "Administrative regulations that alter or amend [an enactment] or enlarge or impair its scope are void

---

[4] As stated, petitioner was convicted of two counts of lewd and lascivious acts on a child under the age of 14 in violation of Penal Code section 288, subdivision (a), among other crimes. A "[l]ewd or lascivious act as defined in subdivision (a) . . . of Section 288" is a violent felony under Penal Code section 667.5, subdivision (c)(6).

6

and courts not only may, but it is their obligation to strike down such regulations." ' [Citations.]" (*Ibid.*)

"To determine whether the regulation here is consistent with the constitutional provisions enacted by Proposition 57, we must interpret the constitutional provisions themselves. Our 'primary concern' in construing a constitutional provision enacted through voter initiative is 'giving effect to the intended purpose of the provisions at issue.' [Citation.] And, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.' [Citations.] In doing so, we look to the text of the constitutional provision at issue and, as appropriate, extrinsic sources such as an initiative's ballot materials." (*Gadlin*, *supra*, 10 Cal.5th at pp. 926-927.)

"Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning." (*Arias*, *supra*, 46 Cal.4th at p. 979.) "A literal construction of an enactment, however, will not control when such a construction would frustrate the manifest purpose of the enactment as a whole. . . . In determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters. [Citations.]" (*Ibid.*) However, "when an argument for or against a ballot measure conflicts with the measure's plain text, the text must govern the measure's interpretation." (*Gadlin*, *supra*, 10 Cal.5th at p. 942.)

**D.** *Section 32(a) Is Ambiguous as Applied to Mixed-Offense Inmates*

Section 32 does not define the phrase, "[a]ny person convicted of a nonviolent felony offense," and is silent regarding its application to individuals who are currently convicted of both nonviolent and violent felonies and are currently serving a term for a violent felony offense.

Notwithstanding section 32's silence regarding its application to mixed-offense inmates, petitioner urges us to follow the *Mohammad* court's plain-language approach to conclude that section 32 mandates nonviolent parole consideration for individuals who

7

are currently convicted of both nonviolent and violent felonies. The *Mohammad* court reasoned that "[t]he phrase 'a nonviolent felony offense' takes the singular form, which indicates it applies to an inmate so long as he or she commits 'a' single nonviolent felony offense," which "is reinforced by the term 'primary offense,' " as that "demonstrates the provision assumes an inmate might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 726.)

But it is just as reasonable to conclude that the phrase, "[a]ny person convicted of a nonviolent felony offense," does not include an individual who is currently convicted of nonviolent and violent felonies and is currently serving a term for a violent felony offense. (See *Viehmeyer*, *supra*, 62 Cal.App.5th at p. 985 ["considering only the language of section 32(a)" and determining that it does not apply to mixed-offense inmates who are currently serving a term for a violent felony]; see *id.* at pp. 985-988 [further determining that the ballot materials support its conclusion].)[5] While the

---

[5] In contrast to *Viehmeyer*, the Court of Appeal in *Douglas* determined that "the language of section 32(a)(1) supports an interpretation that mixed-offense inmates are entitled to early parole consideration," but that "such an interpretation would lead to absurd results the voters did not intend." (*Douglas*, *supra*, 62 Cal.App.5th at p. 729; see also *Ontiveros*, *supra*, 65 Cal.App.5th at pp. 902-903 [joining *Douglas*'s conclusion that a literal interpretation of section 32 would lead to absurd results].) The court observed that "nothing in the election materials, other than the language of section 32(a)(1), evinces an intent on the part of the voters to extend early parole consideration to persons convicted of violent felony offenses," and concluded that "a person convicted of a violent felony offense and sentenced to state prison is ineligiblefor early parole consideration under section 32(a)(1)." (*Douglas*, *supra*, at pp. 733, 734; see also *Ontiveros*, *supra*, at pp. 906-907 [determining that the ballot materials demonstrate an electoral intent to exclude inmates convicted of a violent felony offense from Proposition 57 parole consideration].)

Justice Robie concurred in *Douglas*. Unlike the majority, Justice Robie concluded that "[i]t is clear section 32(a)(1) is ambiguous given the divergence of appellate opinions as to its meaning." (*Douglas*, *supra*, 62 Cal.App.5th at p. 735 (conc. opn. of Robie, J.).) Finding that the ballot materials "provide[] no answers," Justice Robie construed (continued)

8

language of section 32, which defines "the full term for the primary offense" as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence" (§ 32(a)(1)(A)), clearly demonstrates that voters contemplated that nonviolent parole consideration would include individuals currently convicted of multiple offenses, the provision's silence regarding mixed-offense inmates currently serving a term for a violent felony offense renders its application to those individuals ambiguous.

Petitioner denies that he is currently serving a term for a violent felony offense, arguing that "[h]is term for the violent felony offenses has not even started yet" as he is "*still serving*" his "25-year-to-life term for his primary[, nonviolent] offense of pandering a minor." (Italics added.) At the same time, however, he asserts that "he has *already completed* the eight years" for his offense of pandering a minor, "which constitute the 'full term' for Proposition 57 purposes." (Italics added.) Petitioner cannot have it both ways. If petitioner came within the provisions of section 32, he would have "complet[ed] the full term for his or her primary offense." (§ 32(a)(1).) Respondent concedes that petitioner's conviction of pandering a minor under the age of 16 is the primary offense and that under section 32(a)(1)(A) the full term for the offense is eight years. (See *In re Edwards* (2018) 26 Cal.App.5th 1181, 1192 [a "Three Strikes law indeterminate sentence 'is put aside for purposes of determining the full term for [the] primary offense [under section 32], which . . . is the upper term' "]; Pen. Code, § 266i, subd. (b)(2) [carrying an upper term of eight years].) Thus, given that petitioner was sentenced in 2000, petitioner

---

section 32(a)(1) to mean that any individual convicted of *one* violent felony offense that was designated as the primary offense shall be eligible for parole consideration once the individual has served his or her full term for the primary offense. (*Douglas*, *supra*, at p. 735.) Because after completing the term for his primary, nonviolent offense, the petitioner in *Douglas* was currently serving a term for a violent felony offense, Justice Robie concluded he was ineligible for nonviolent parole consideration because he was "not presently convicted of a nonviolent felony as described in section 32(a)(1)." (*Id.* at p. 739.)

has completed serving the eight-year "full term" for "his primary offense." (§ 32(a)(1).) In addition, we note that petitioner's contention fails even viewing his sentence outside of Proposition 57's scheme because "a prisoner confined under consecutive sentences must be regarded as undergoing a single, continuous term of confinement rather than a series of distinct, independent terms." (*In re Cowen* (1946) 27 Cal.2d 637, 643.) Thus, petitioner is currently serving a term for a violent felony offense as he was convicted of two counts of lewd and lascivious acts on a child under the age of 14 in violation of Penal Code section 288, subdivision (a) and was sentenced to consecutive terms of 25 years to life. (Pen. Code, § 667.5, subd. (c)(6).)

In sum, section 32's silence on its application to mixed-offense inmates and its reasonable susceptibility of more than one meaning in this context lead us to conclude that the provision is ambiguous as applied to individuals who are currently convicted of nonviolent and violent felony offenses and are currently serving a term for a violent felony offense.

### E. *The Ballot Materials Demonstrate that CDCR's Regulations Are Consistent with Voter Intent*

Because the language of section 32(a) as applied to mixed-offense inmates is "reasonably susceptible of more than one meaning" (*Arias*, *supra*, 46 Cal.4th at p. 979), it is appropriate to "consider ballot summaries and arguments in determining the voters' intent and understanding of [the] measure" (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571).

Here, the question is whether the ballot materials indicate that voters intended to exclude from nonviolent parole consideration inmates currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense. (See *Gadlin*, *supra*, 10 Cal.5th at p. 939.) Under the California Supreme Court's guidance in *Gadlin* and *Valencia*, based on Proposition 57's text and the ballot materials as a whole, we conclude that voters intended to exclude mixed-offense inmates who are

10

currently serving a term for a violent felony offense from Proposition 57's parole consideration scheme.

In *Gadlin*, the court held that CDCR's categorical exclusion of "all inmates convicted of a registerable sex offense, regardless of whether that offense is defined by the regulations as a nonviolent felony and regardless of whether the inmate is currently incarcerated for that conviction," from nonviolent parole consideration conflicted with section 32(a)(1). (*Gadlin*, *supra*, 10 Cal.5th at p. 919.) After determining that the language of section 32(a)(1) unambiguously "indicates the voters intended that nonviolent offender parole consideration would be premised on the inmate's current conviction alone" (*Gadlin*, *supra*, at p. 932), the court found that the ballot materials "buttress[ed] [its] reading of the constitutional text in this case" (*id.* at p. 936).

The court observed that "[t]he language of the constitutional provision did not indicate to the voters that inmates' prior convictions would play a role in determining nonviolent offender parole eligibility. Nor did the Attorney General's official title and summary, the Legislative Analyst's analysis, or the proponents' initial argument in favor of Proposition 57 so indicate. If . . . the voters intended to carve out an entire category of offenders from nonviolent parole consideration based on prior criminal history, these sources likely would have mentioned as much." (*Gadlin*, *supra*, 10 Cal.5th at p. 939.) The court also noted that the arguments of Proposition 57's opponents clearly told voters that "[a]n inmate's prior convictions, regardless of their number or nature, would not be a disqualifying factor for nonviolent parole consideration purposes," and that voters approved Proposition 57 " 'despite these warnings,' " which "supports a conclusion that the voters intended to provide broad parole consideration for nonviolent offenders without regard for prior convictions." (*Gadlin*, *supra*, at p. 940.) Finally, the court rejected CDCR's contention that "a single line in the proponent's rebuttal argument" stating that the opponents were " 'wrong,' " demonstrated a voter intent to exclude

11

inmates based on their criminal history.  (*Id.* at pp. 939, 940.)  The court focused instead on "the context of the entire ballot materials provided to the voters."  (*Id.* at p. 939.)

In *Valencia*, the California Supreme Court considered whether Proposition 47's definition of "unreasonable risk of danger to public safety" applies to Proposition 36 resentencing proceedings based on the provision in Proposition 47 that stated, " '*As used throughout this code*, " ' "unreasonable risk of danger to public safety" ' " means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of' [Penal Code] section 667, subdivision (e)(2)(C)(iv)."  (*Valencia*, *supra*, 3 Cal.5th at p. 351, italics added.)  In holding that Proposition 47's definition does not apply to Proposition 36 resentencing proceedings, the majority observed that "neither the initiative's text nor its supporting materials describe any intention to amend the criteria for [Proposition 36] resentencing . . . , and both the Attorney General, who is required by law to summarize ballot measures, and the Legislative Analyst, who is required by law to provide and explain to voters a measure's potential impacts, did not interpret the phrase '[a]s used throughout this code' as referring to [Proposition 36] sentencing criteria." (*Valencia*, *supra*, at p. 357; see also *id.* at pp. 365-367.)

Here, as in *Gadlin* and *Valencia*, neither the measure's text, the Attorney General's official summary, nor the Legislative Analyst's analysis "describe[s] any intention" to amend the Constitution to make individuals currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense eligible for nonviolent parole consideration.  (*Valencia*, *supra*, 3 Cal.5th at p. 357; see also *Gadlin*, *supra*, 10 Cal.5th at p. 939.)  Beginning with the measure's text, it is significant that Proposition 57 states solely that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration after completing the full term for his or her primary offense," with no mention of violent felony offenses. (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141.)  Likewise, both the Attorney General's official summary and the Legislative Analyst's analysis

spoke solely in terms of individuals convicted of nonviolent felonies as being eligible for nonviolent parole consideration.

The Attorney General stated that the initiative measure "[a]llows parole consideration for persons convicted of nonviolent felonies, upon completion of prison term for their primary offense as defined." (Voter Information Guide, Gen. Elec., *supra*, Official Title and Summary, p. 54.) In addition, the Attorney General stated that the measure "[r]equires [CDCR] to adopt regulations to implement new parole and sentence credit provisions and certify they enhance public safety." (*Ibid.*)

The Legislative Analyst, when providing background on adult sentencing, explained that "[i]ndividuals in prison have been convicted of a main or primary offense. They often serve additional time due to other, lesser crimes for which they are convicted at the same time. In addition, state law includes various sentencing enhancements that can increase the amount of time individuals serve." (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 54.) Regarding parole consideration hearings, the Legislative Analyst observed that "[i]ndividuals who receive a determinate sentence do not need a parole consideration hearing to be released from prison at the end of their sentence. However, some of these individuals currently are eligible for parole consideration hearings before they have served their entire sentence. For example, certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." (*Ibid.*)

Regarding the initiative's proposed constitutional amendment, the Legislative Analyst stated that "[t]he measure changes the State Constitution to make individuals who are convicted of 'nonviolent felony' offenses eligible for parole consideration after serving the full prison term for their primary offense. As a result, [the parole board] would decide whether to release these individuals before they have served any additional

13

time related to other crimes or sentencing enhancements." (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 56.) Explaining that "[t]he measure requires CDCR to adopt regulations to implement these changes," the Legislative Analyst stated that "[a]lthough the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent." (*Ibid.*) Finally, when discussing the fiscal effects of the measure, the Legislative Analyst repeatedly referred to the affected inmates as "nonviolent offenders." (*Ibid.*)

Thus, the Attorney General and the Legislative Analyst "failed to note or identify any effect the measure might have" on mixed-offense inmates currently serving a term for a violent felony offense (*Valencia*, *supra*, 3 Cal.5th at p. 374), or that the inclusion of these mixed-offense inmates would render Proposition 57's parole consideration scheme *broader* than the scheme described by the Legislative Analyst that was ordered by the federal court and was in place at the time of the election (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 54). Had the voters intended to include mixed-offense inmates in Proposition 57's parole consideration scheme, "these sources likely would have mentioned as much." (*Gadlin*, *supra*, 10 Cal.5th at p. 939; see also *Valencia*, *supra*, at pp. 365-366.)

Arguments for and against the measure were also presented to voters. As relevant here, when discussing "what [Proposition 57] does," proponents argued that it "[a]llows parole consideration for people with non-violent convictions who complete the full prison term for their primary offense." (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58, italics omitted.) Proponents added, "And as the California Supreme Court clearly stated: parole eligibility in Prop. 57 applies '*only to prisoners convicted of non-violent felonies*.' " (*Ibid.*)

Proposition 57's opponents argued that "[t]he authors of Prop. 57 are not telling you the truth. IT APPLIES TO VIOLENT CRIMINALS." (Voter Information Guide,

14

Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58.) Opponents asserted that the measure amends the Constitution "to give these new early parole rights to criminals who are convicted of many violent and horrible crimes, including: [¶] rape of an unconscious victim; human sex trafficking; assault with a deadly weapon; lewd acts against a 14-year-old; hostage taking; hate crimes causing injury."[6] (*Ibid.*, capitalization omitted.)

In rebuttal, the measure's proponents argued that it "[d]oes NOT authorize parole for violent offenders," and asserted that "[t]he California Supreme Court clearly stated that parole eligibility under Prop. 57 applies, '*only to prisoners convicted of non-violent felonies*.' (Brown v. Superior Court, June 6, 2016)."[7] (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) Lastly, proponents argued that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole." (*Ibid.*)

Read in the context of the ballot materials as a whole (see *Gadlin*, *supra*, 10 Cal.5th at p. 939), the arguments informed voters that the measure excluded individuals currently serving a term for a violent felony offense. The proponents consistently argued as much. And although the opponents argued that the measure applied to inmates "convicted of many violent and horrible crimes" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58), the proponents specifically and

---

[6] It appears that the opponents were highlighting crimes not listed in Penal Code section 667.5, subdivision (c).

[7] *Brown v. Superior Court* (2016) 63 Cal.4th 335, 339 (*Brown*) involved whether amendments to Proposition 57 violated the Elections Code. When summarizing the amendments, the California Supreme Court stated, "The newly proposed constitutional provision also addresses parole suitability review. It would be significantly *more* restrictive in one way, because *it would apply only to prisoners convicted of nonviolent felonies*. It would be significantly less restrictive in another way, because it would apply to all prisoners regardless of their age at the time of the offense. It would also authorize [CDCR] to award credits for good behavior and rehabilitation." (*Brown*, *supra*, at p. 352, fn. omitted, second italics added; see *id.* at p. 353 [observing that Proposition 57 as amended would apply to inmates serving Three Strike sentences "so long as their offense was nonviolent"].)

15

unmistakably denied it, arguing that the measure did "not authorize parole for violent offenders" and that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59, capitalization omitted).

Moreover, to the extent that these arguments conflicted, "we presume that the voters relied on the text of the measure." (*Gadlin*, *supra*, 10 Cal.5th at p. 940.) The measure's text reinforced the proponents' arguments as it made no mention of violent felony offenses, stating solely that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration after completing the full term for his or her primary offense."[8] (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141, italics omitted.) The clear implication from the measure's text, the Attorney General's official summary, the Legislative Analyst's analysis, and the ballot arguments is that inmates currently serving a term for a violent felony offense are excluded from nonviolent parole consideration. " 'We cannot presume that . . . the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet.' " (*Valencia*, *supra*, 3 Cal.5th at p. 364.)

Certainly, an uncodified section of Proposition 57 stated that in its enactment, the electorate's "purpose and intent" was to: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, *supra*,

---

[8] Listing 15 offenses, opponents also argued that "[t]he authors of Proposition 57 claim it only applies to 'non-violent' crimes, but their poorly drafted measure deems the following crimes 'non-violent' and makes the perpetrators eligible for EARLY PAROLE." (Voter Information Guide, Gen. Elec., *supra*, argument against Prop. 57, p. 59.) However, the measure's text does not "deem" any offenses nonviolent or violent; it is entirely silent in that regard. (See Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141.)

16

text of Prop. 57, § 2 p. 141.)  And another uncodified section stated that the "act shall be liberally construed to effectuate its purposes." (*Id.*, § 9, p. 146.)  Even so, to discern from the ballot materials an electoral intent to include in Proposition 57's nonviolent parole consideration scheme individuals currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense "would be imputing to voters an intent that could not reasonably have existed, where even the Attorney General and Legislative Analyst, in advising voters, apparently were unaware of that professed intent." (*Valencia*, *supra*, 3 Cal.5th at p. 375.)  " ' "[I]n the case of a voters' initiative . . . we may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." ' " (*Ibid.*, fn. omitted.)  Based on Proposition 57's text and the ballot materials as a whole, voters clearly did not contemplate that inmates currently serving a term for a violent felony offense would be eligible for nonviolent parole consideration, and we should not interpret section 32 to the contrary.  " 'The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Arias*, *supra*, 46 Cal.4th at p. 979.)

For these reasons, based on the principles articulated in *Gadlin* and *Valencia*, we determine that CDCR " ' " 'reasonably interpreted [its] mandate' " ' " (*Gadlin*, *supra*, 10 Cal.5th at p. 926) by adopting regulations that exclude from nonviolent parole consideration any inmate who is "currently serving a term of life with the possibility of parole for a 'violent felony' " (Cal. Code Regs., tit. 15, § 3495, subd. (a)(3); see *id.*, § 3496, subd. (a)).  In other words, we conclude that the regulations are " ' "consistent and not in conflict with" ' " section 32.  (*Gadlin*, *supra*, 10 Cal.5th at p. 926.)

## IV.    DISPOSITION

The petition for writ of habeas corpus is denied.

17

_____

BAMATTRE-MANOUKIAN, J.

I CONCUR:

_____

ELIA, ACTING P.J.

*In re C.R.*
**H047991**

Greenwood, P.J., Dissenting:

I respectfully dissent for the reasons set forth in my dissenting opinion in *In re Guice* (H047989, July 21, 2021).  The CDCR's regulations categorically exclude C.R. and prisoners like him from early parole consideration based on an impermissibly narrow regulation.  Because these regulations are inconsistent with and in conflict with the plain language and purposes in the text of the constitutional provision, I would grant relief, striking down the regulations and ordering the CDCR to evaluate C.R. for early parole consideration.

_____
Greenwood, P.J.

_In re C.R._
H047991

2