Filed 7/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re STEPHEN GUICE<br><br>on Habeas Corpus. | H047989<br>(Monterey County<br>Super. Ct. Nos. SS100975A,<br>SS110737B, SS130742A,<br>19HC000143) |

## I.     INTRODUCTION

This case asks us to decide whether the regulations adopted by the California Department of Corrections and Rehabilitation (CDCR) are " 'consistent and not in conflict with' " the constitutional provision mandating nonviolent parole consideration that was enacted by voters through their approval of Proposition 57.  (*In re Gadlin* (2020) 10 Cal.5th 915, 926 (*Gadlin*).)  The initiative measure amended the California Constitution to provide that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."  (Cal. Const., art. I, § 32, subd. (a)(1).)[1]  Section 32 does not define the phrase "convicted of a nonviolent felony offense."

Section 32 directs CDCR to "adopt regulations in furtherance of these provisions" and to "certify that these regulations protect and enhance public safety."  (§ 32(b).)  As relevant here, the regulations CDCR adopted in furtherance of section 32 exclude from nonviolent parole consideration any inmate who is "currently serving a term of

---

[1] We use "section 32" to refer to article I, section 32 of the California Constitution generally.  We use "section 32(a)(1)" to specify subdivision (a)(1) of section 32, and so on.

incarceration for a 'violent felony.' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5); see *id.*, § 3491, subd. (a).)

Petitioner Stephen Guice challenges CDCR's regulations, contending that they are contrary to section 32 and electoral intent. Petitioner asserts that under section 32's plain language, he is entitled to nonviolent parole consideration because he has completed serving the full term for his primary, nonviolent offense. The Courts of Appeal examining this issue have reached different conclusions on the meaning of section 32 as applied to mixed-offense inmates like petitioner—inmates who are currently convicted of both nonviolent and violent felony offenses and are currently serving a term for a violent felony offense.

In *In re Mohammad* (2019) 42 Cal.App.5th 719 (*Mohammad*), review granted February 19, 2020, S259999, the court held that CDCR's regulations improperly exclude mixed-offense inmates from nonviolent parole consideration because "under [section 32's] plain meaning," an individual "who is serving an aggregate sentence for more than one conviction will be eligible for an early parole hearing if one of those convictions was for 'a' nonviolent felony offense." (*Id.* at p. 726.)

In *In re Douglas* (2021) 62 Cal.App.5th 726 (*Douglas*), in contrast, the court upheld CDCR's regulations excluding mixed-offense inmates from nonviolent parole consideration because a literal interpretation of section 32(a)(1) "would lead to absurd results the voters did not intend." (*Douglas*, *supra*, at p. 729.) Justice Robie concurred in *Douglas*, concluding that section 32(a)(1) was ambiguous as applied to mixed-offense inmates and construing section 32(a)(1) to mean that an individual convicted of *one* violent felony offense that was designated as the primary offense shall be eligible for parole consideration once the individual has served the full term for his or her primary offense. (*Douglas*, *supra*, at p. 735 (conc. opn. of Robie, J.).)

In *In re Viehmeyer* (2021) 62 Cal.App.5th 973 (*Viehmeyer*), based on section 32(a)'s language, the court held that "where a defendant is convicted of both a

2

violent felony and a nonviolent felony, and the nonviolent felony is the primary offense for purposes of sentencing, the defendant is not entitled to early parole consideration under section 32(a) after completing the full term for the primary offense if he or she is still serving a term for the violent offense." (*Viehmeyer*, *supra*, at p. 978.)

And most recently, in *In re Ontiveros* (2021) 65 Cal.App.5th 899 (*Ontiveros*), the court "join[ed] *Viehmeyer* and *Douglas* in disagreeing with *Mohammad*'s conclusion that an inmate serving a determinate sentence for both violent and nonviolent convictions is entitled to early parole consideration under Proposition 57" because "[e]ven accepting *Mohammad*'s position that the language of Proposition 57 unambiguously applies to such inmates, such application would lead to the absurd result that an inmate convicted of a violent offense and several nonviolent offenses would be entitled to *earlier* parole consideration than an inmate convicted of only the violent offense." (*Id.* at pp. 902-903.)

Although section 32 clearly mandates nonviolent parole consideration for individuals convicted solely of nonviolent offenses, the fact that the provision does not define the phrase, "convicted of a nonviolent felony offense," renders it "reasonably susceptible of more than one meaning" when applied to mixed-offense inmates. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 (*Arias*).) Thus, mindful that "our primary task here is to ascertain the intent of the electorate" (*id.* at pp. 978-979), we believe the appropriate course is to examine Proposition 57's ballot materials in order to determine the voters' intent and whether CDCR's regulations "constitute a reasonable interpretation of the requirement . . . that '[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense' " (*Gadlin*, *supra*, 10 Cal.5th at p. 934).

Under the California Supreme Court's guidance in *People v. Gadlin*, *supra*, 10 Cal.5th 915 and *People v. Valencia* (2017) 3 Cal.5th 347 (*Valencia*), based on Proposition 57's text and the ballot materials as a whole, we conclude that CDCR's regulations excluding mixed-offense inmates who are currently serving a term for a

3

violent felony offense from nonviolent parole consideration are "a reasonable interpretation" of section 32(a) (*Gadlin*, *supra*, at p. 934). Accordingly, we deny the petition for writ of habeas corpus.

## II.     PROCEDURAL BACKGROUND

In 2014, petitioner was convicted of the following offenses in three separate cases: transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)); two counts of possession of cocaine base for sale (*id.*, § 11351.5); evading an officer (Veh. Code, § 2800.2, subd. (a)); robbery (Pen. Code, § 211); possession of a controlled substance for sale (Health & Saf. Code, § 11351); and bringing a controlled substance into jail (Pen. Code, § 4573).[2] The allegation that petitioner had a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) was found true, as were various sentence enhancement allegations.

The superior court sentenced petitioner to an aggregate term of 19 years 4 months, comprised of 10 years for transportation of a controlled substance, 1 year 4 months for evading an officer, 1 year for robbery, and 7 years for the sentence enhancements.[3] The court awarded petitioner 1,405 days of custody credit.

In 2018, CDCR denied petitioner's request for nonviolent parole consideration because he did not qualify as a nonviolent offender under California Code of Regulations, title 15, section 3490 based on his consecutive sentence for robbery, a violent felony offense.

In 2019, petitioner filed a petition for writ of habeas corpus in the superior court, contending that he is eligible for parole consideration under Proposition 57 because his primary offense of transportation of a controlled substance is nonviolent. The court

---

[2] Petitioner was also convicted of possession of marijuana for sale (Health and Saf. Code, § 11359), which was reduced to a misdemeanor in 2019.

[3] The terms imposed for petitioner's remaining offenses and enhancements were either concurrent or stayed.

4

denied the petition, observing that "what constitutes a nonviolent offender is not specifically defined by the initiative," and finding that CDCR's regulations excluding offenders currently serving a sentence for a violent offense "reasonably effectuate[] [the initiative's] directive."

In March 2020, petitioner petitioned this court for a writ of habeas corpus on the same ground asserted in the superior court. After we received informal briefing, we ordered CDCR to show cause why petitioner is not entitled to relief. The Attorney General filed a return and petitioner filed a traverse through appointed counsel.

### III. DISCUSSION

#### A. *Proposition 57 and Section 32*

In November 2016, the electorate approved Proposition 57, the Public Safety and Rehabilitation Act of 2016. (*Gadlin*, *supra*, 10 Cal.5th at p. 919.) Among other enactments, the initiative amended article I of the California Constitution by adding section 32. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 3, p. 141.)

Section 32(a)(1) provides: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." "Primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (§ 32(a)(1)(A).) The provision states that it was "enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order," and directs CDCR to "adopt regulations in furtherance of these provisions" and "certify that these regulations protect and enhance public safety." (§ 32(a), (b).)

#### B. *CDCR's Regulations*

As relevant here, the regulations CDCR adopted in furtherance of section 32 provide that "[a] determinately-sentenced nonviolent offender, as defined in

5

subsections 3490(a) and 3490(b), shall be eligible for parole consideration by the Board of Parole Hearings." (Cal. Code Regs., tit. 15, § 3491, subd. (a).) Section 3490 excludes from its definition of " 'determinately-sentenced nonviolent offender' " any inmate who is "currently serving a term of incarceration for a 'violent felony.' " (*Id.*, § 3490, subd. (a)(5).) The regulations define " '[v]iolent felony' " as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code."[4] (*Id.*, § 3490, subd. (c)).

## C. *Standard of Review and Principles of Interpretation*

When evaluating the validity of a regulation, "we first ask whether the regulation is ' "consistent and not in conflict with" ' the provision that authorizes it. [Citation.] We then inquire whether the regulation is reasonably necessary to effectuate the purpose of the authorizing law. [Citations.] Our task as a reviewing court ' " 'is to decide whether the [agency] reasonably interpreted [its] mandate.' " ' " (*Gadlin*, *supra*, 10 Cal.5th at p. 926.) The validity of a state agency's regulation is presumed, and the party challenging the regulation must show its invalidity. (*Ibid.*) " ' "Administrative regulations that alter or amend [an enactment] or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations." ' [Citations.]" (*Ibid.*)

"To determine whether the regulation here is consistent with the constitutional provisions enacted by Proposition 57, we must interpret the constitutional provisions themselves. Our 'primary concern' in construing a constitutional provision enacted through voter initiative is 'giving effect to the intended purpose of the provisions at issue.' [Citation.] And, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.' [Citations.] In doing so, we look to the text of the constitutional provision at issue and, as appropriate, extrinsic sources such as an initiative's ballot materials." (*Gadlin*, *supra*, 10 Cal.5th at pp. 926-927.)

---

[4] As stated, petitioner was convicted of robbery, among other crimes. Robbery is a violent felony under Penal Code section 667.5, subdivision (c)(9).

"Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning." (*Arias*, *supra*, 46 Cal.4th at p. 979.) "A literal construction of an enactment, however, will not control when such a construction would frustrate the manifest purpose of the enactment as a whole. . . . In determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters. [Citations.]" (*Ibid.*) However, "when an argument for or against a ballot measure conflicts with the measure's plain text, the text must govern the measure's interpretation." (*Gadlin*, *supra*, 10 Cal.5th at p. 942.)

D. *Section 32(a) Is Ambiguous as Applied to Mixed-Offense Inmates*

Section 32 does not define the phrase, "[a]ny person convicted of a nonviolent felony offense," and is silent regarding its application to individuals who are currently convicted of both nonviolent and violent felonies and are currently serving a term for a violent felony offense.

Notwithstanding section 32's silence regarding its application to mixed-offense inmates, petitioner urges us to follow the *Mohammad* court's plain-language approach to conclude that section 32 mandates nonviolent parole consideration for individuals who are currently convicted of both nonviolent and violent felonies. The *Mohammad* court reasoned that "[t]he phrase 'a nonviolent felony offense' takes the singular form, which indicates it applies to an inmate so long as he or she commits 'a' single nonviolent felony offense," which "is reinforced by the term 'primary offense,' " as that "demonstrates the provision assumes an inmate might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 726.)

But it is just as reasonable to conclude that the phrase, "[a]ny person convicted of a nonviolent felony offense," does not include an individual who is currently convicted of nonviolent and violent felonies and is currently serving a term for a violent felony

7

offense.  (See *Viehmeyer*, *supra*, 62 Cal.App.5th at p. 985 ["considering only the language of section 32(a)" and determining that it does not apply to mixed-offense inmates who are currently serving a term for a violent felony]; see *id.* at pp. 985-988 [further determining that the ballot materials support its conclusion].)[5]  While the language of section 32, which defines "the full term for the primary offense" as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence" (§ 32(a)(1)(A)), clearly demonstrates that voters contemplated that nonviolent parole consideration would include individuals currently convicted of multiple offenses, the

---

[5] In contrast to *Viehmeyer*, the Court of Appeal in *Douglas* determined that "the language of section 32(a)(1) supports an interpretation that mixed-offense inmates are entitled to early parole consideration," but that "such an interpretation would lead to absurd results the voters did not intend." (*Douglas*, *supra*, 62 Cal.App.5th at p. 729; see also *Ontiveros*, *supra*, 65 Cal.App.5th at pp. 902-903 [joining *Douglas*'s conclusion that a literal interpretation of section 32 would lead to absurd results].)  The court observed that "nothing in the election materials, other than the language of section 32(a)(1), evinces an intent on the part of the voters to extend early parole consideration to persons convicted of violent felony offenses," and concluded that "a person convicted of a violent felony offense and sentenced to state prison is ineligible for early parole consideration under section 32(a)(1)." (*Douglas*, *supra*, at pp. 733, 734; see also *Ontiveros*, *supra*, at pp. 906-907 [determining that the ballot materials demonstrate an electoral intent to exclude inmates convicted of a violent felony offense from Proposition 57 parole consideration].)

Justice Robie concurred in *Douglas*.  Unlike the majority, Justice Robie concluded that "[i]t is clear section 32(a)(1) is ambiguous given the divergence of appellate opinions as to its meaning." (*Douglas*, *supra*, 62 Cal.App.5th at p. 735 (conc. opn. of Robie, J.).) Finding that the ballot materials "provide[] no answers," Justice Robie construed section 32(a)(1) to mean that any individual convicted of *one* violent felony offense that was designated as the primary offense shall be eligible for parole consideration once the individual has served his or her full term for the primary offense. (*Douglas*, *supra*, at p. 735.)  Because after completing the term for his primary, nonviolent offense, the petitioner in *Douglas* was currently serving a term for a violent felony offense, Justice Robie concluded he was ineligible for nonviolent parole consideration because he was "not presently convicted of a nonviolent felony as described in section 32(a)(1)." (*Id.* at p. 739.)

8

provision's silence regarding mixed-offense inmates currently serving a term for a violent felony offense renders its application to those individuals ambiguous.

Moreover, it is notable that petitioner's interpretation of section 32 differs from the interpretations reached by the appellate courts on this issue, including in *Mohammad*. Petitioner asserts that "only mixed-offense offenders *whose primary term is for a non-violent felony* are entitled to parole consideration under Proposition 57." (Italics added.) Petitioner's interpretation is thus narrower than the *Mohammad* court's conclusion that the plain language of section 32(a) unambiguously means that any person convicted of a nonviolent felony offense is eligible for nonviolent parole consideration after serving the full term for his or her primary offense—regardless of whether the individual's primary offense was for a nonviolent or violent felony. (See *Mohammad*, *supra*, 42 Cal.App.5th at p. 726; see *id.* at p. 725 [finding section 32(a)'s plain language "means any nonviolent felony offense component of a sentence will suffice" to render an inmate eligible for nonviolent parole consideration].)

Petitioner argues that in 2020 "the voters agreed with *Mohammad* when they overwhelmingly rejected Proposition 20," demonstrating that the *Mohammad* court "correctly interpreted section 32." (Some capitalization omitted.) However, "we cannot speculate that the rejection amounted to an implied approval of the [*Mohammad*] decision." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 238 [regarding the voters' rejection of Proposition 136 four years after "adopting its substance in Proposition 62"].) This is especially true given that Proposition 20 proposed to "[r]eform the parole system," "[r]eform theft laws," *and* "[e]xpand DNA collection." (Text of Proposed Laws, Gen. Elec. (Nov. 3, 2020) text of Prop. 20, § 2, p. 15.) There is simply no way of knowing why voters rejected Proposition 20 four years after they approved Proposition 57.

In sum, section 32's silence on its application to mixed-offense inmates and its reasonable susceptibility of more than one meaning in this context lead us to conclude

that the provision is ambiguous as applied to individuals who are currently convicted of nonviolent and violent felony offenses and are currently serving a term for a violent felony offense.

### E.     *The Ballot Materials Demonstrate that CDCR's Regulations Are Consistent with Voter Intent*

Because the language of section 32(a) as applied to mixed-offense inmates is "reasonably susceptible of more than one meaning" (*Arias*, *supra*, 46 Cal.4th at p. 979), it is appropriate to "consider ballot summaries and arguments in determining the voters' intent and understanding of [the] measure" (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571).

Here, the question is whether the ballot materials indicate that voters intended to exclude from nonviolent parole consideration inmates currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense. (See *Gadlin*, *supra*, 10 Cal.5th at p. 939.) Under the California Supreme Court's guidance in *Gadlin* and *Valencia*, based on Proposition 57's text and the ballot materials as a whole, we conclude that voters intended to exclude mixed-offense inmates who are currently serving a term for a violent felony offense from Proposition 57's parole consideration scheme.

In *Gadlin*, the court held that CDCR's categorical exclusion of "all inmates convicted of a registerable sex offense, regardless of whether that offense is defined by the regulations as a nonviolent felony and regardless of whether the inmate is currently incarcerated for that conviction," from nonviolent parole consideration conflicted with section 32(a)(1). (*Gadlin*, *supra*, 10 Cal.5th at p. 919.) After determining that the language of section 32(a)(1) unambiguously "indicates the voters intended that nonviolent offender parole consideration would be premised on the inmate's current conviction alone" (*Gadlin*, *supra*, at p. 932), the court found that the ballot materials "buttress[ed] [its] reading of the constitutional text in this case" (*id.* at p. 936).

10

The court observed that "[t]he language of the constitutional provision did not indicate to the voters that inmates' prior convictions would play a role in determining nonviolent offender parole eligibility. Nor did the Attorney General's official title and summary, the Legislative Analyst's analysis, or the proponents' initial argument in favor of Proposition 57 so indicate. If . . . the voters intended to carve out an entire category of offenders from nonviolent parole consideration based on prior criminal history, these sources likely would have mentioned as much." (*Gadlin*, *supra*, 10 Cal.5th at p. 939.) The court also noted that the arguments of Proposition 57's opponents clearly told voters that "[a]n inmate's prior convictions, regardless of their number or nature, would not be a disqualifying factor for nonviolent parole consideration purposes," and that voters approved Proposition 57 " 'despite these warnings,' " which "supports a conclusion that the voters intended to provide broad parole consideration for nonviolent offenders without regard for prior convictions." (*Gadlin*, *supra*, at p. 940.) Finally, the court rejected CDCR's contention that "a single line in the proponent's rebuttal argument" stating that the opponents were " 'wrong,' " demonstrated a voter intent to exclude inmates based on their criminal history. (*Id.* at pp. 939, 940.) The court focused instead on "the context of the entire ballot materials provided to the voters." (*Id.* at p. 939.)

In *Valencia*, the California Supreme Court considered whether Proposition 47's definition of " ' "unreasonable risk of danger to public safety" ' " applies to Proposition 36 resentencing proceedings based on the provision in Proposition 47 that stated, " '*As used throughout this code*, "unreasonable risk of danger to public safety" means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of' [Penal Code] section 667, subdivision (e)(2)(C)(iv)." (*Valencia*, *supra*, 3 Cal.5th at p. 351, italics added.) In holding that Proposition 47's definition does not apply to Proposition 36 resentencing proceedings, the majority observed that "neither the initiative's text nor its supporting materials describe any intention to amend the criteria for [Proposition 36] resentencing . . . , and both the Attorney General, who is required by

11

law to summarize ballot measures, and the Legislative Analyst, who is required by law to provide and explain to voters a measure's potential impacts, did not interpret the phrase '[a]s used throughout this code' as referring to [Proposition 36] sentencing criteria." (*Valencia*, *supra*, at p. 357; see also *id.* at pp. 365-367.)

Here, as in *Gadlin* and *Valencia*, neither the measure's text, the Attorney General's official summary, nor the Legislative Analyst's analysis "describe[s] any intention" to amend the Constitution to make individuals currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense eligible for nonviolent parole consideration. (*Valencia*, *supra*, 3 Cal.5th at p. 357; see also *Gadlin*, *supra*, 10 Cal.5th at p. 939.) Beginning with the measure's text, it is significant that Proposition 57 states solely that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration after completing the full term for his or her primary offense," with no mention of violent felony offenses. (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141.) Likewise, both the Attorney General's official summary and the Legislative Analyst's analysis spoke solely in terms of individuals convicted of nonviolent felonies as being eligible for nonviolent parole consideration.

The Attorney General stated that the initiative measure "[a]llows parole consideration for persons convicted of nonviolent felonies, upon completion of prison term for their primary offense as defined." (Voter Information Guide, Gen. Elec., *supra*, Official Title and Summary, p. 54.) In addition, the Attorney General stated that the measure "[r]equires [CDCR] to adopt regulations to implement new parole and sentence credit provisions and certify they enhance public safety." (*Ibid.*)

The Legislative Analyst, when providing background on adult sentencing, explained that "[i]ndividuals in prison have been convicted of a main or primary offense. They often serve additional time due to other, lesser crimes for which they are convicted at the same time. In addition, state law includes various sentencing enhancements that

12

can increase the amount of time individuals serve." (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 54.) Regarding parole consideration hearings, the Legislative Analyst observed that "[i]ndividuals who receive a determinate sentence do not need a parole consideration hearing to be released from prison at the end of their sentence. However, some of these individuals currently are eligible for parole consideration hearings before they have served their entire sentence. For example, certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." (*Ibid.*)

Regarding the initiative's proposed constitutional amendment, the Legislative Analyst stated that "[t]he measure changes the State Constitution to make individuals who are convicted of 'nonviolent felony' offenses eligible for parole consideration after serving the full prison term for their primary offense. As a result, [the parole board] would decide whether to release these individuals before they have served any additional time related to other crimes or sentencing enhancements." (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 56.) Explaining that "[t]he measure requires CDCR to adopt regulations to implement these changes," the Legislative Analyst stated that "[a]lthough the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent." (*Ibid.*) Finally, when discussing the fiscal effects of the measure, the Legislative Analyst repeatedly referred to the affected inmates as "nonviolent offenders." (*Ibid.*)

Thus, the Attorney General and the Legislative Analyst "failed to note or identify any effect the measure might have" on mixed-offense inmates currently serving a term for a violent felony offense (*Valencia*, *supra*, 3 Cal.5th at p. 374), or that the inclusion of these mixed-offense inmates would render Proposition 57's parole consideration scheme

13

*broader* than the scheme described by the Legislative Analyst that was ordered by the federal court and was in place at the time of the election (Voter Information Guide, Gen. Elec., *supra*, Analysis by the Legis. Analyst, p. 54).  Had the voters intended to include mixed-offense inmates in Proposition 57's parole consideration scheme, "these sources likely would have mentioned as much."  (*Gadlin*, *supra*, 10 Cal.5th at p. 939; see also *Valencia*, *supra*, at pp. 365-366.)

Arguments for and against the measure were also presented to voters.  As relevant here, when discussing "what [Proposition 57] does," proponents argued that it "[a]llows parole consideration for people with non-violent convictions who complete the full prison term for their primary offense."  (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58, italics omitted.)  Proponents added, "And as the California Supreme Court clearly stated:  parole eligibility in Prop. 57 applies '*only to prisoners convicted of non-violent felonies*.' "  (*Ibid.*)

Proposition 57's opponents argued that "[t]he authors of Prop. 57 are not telling you the truth.  IT APPLIES TO VIOLENT CRIMINALS."  (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58.)  Opponents asserted that the measure amends the Constitution "to give these new early parole rights to criminals who are convicted of many violent and horrible crimes, including:  [¶] rape of an unconscious victim; human sex trafficking; assault with a deadly weapon; lewd acts against a 14-year-old; hostage taking; hate crimes causing injury."[6]  (*Ibid.*, capitalization omitted.)

In rebuttal, the measure's proponents argued that it "[d]oes NOT authorize parole for violent offenders," and asserted that "[t]he California Supreme Court clearly stated that parole eligibility under Prop. 57 applies, '*only to prisoners convicted of non-violent*

---

[6] It appears that the opponents were highlighting crimes not listed in Penal Code section 667.5, subdivision (c).

14

*felonies.*' (Brown v. Superior Court, June 6, 2016)."[7] (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) Lastly, proponents argued that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole." (*Ibid.*)

Read in the context of the ballot materials as a whole (see *Gadlin*, *supra*, 10 Cal.5th at p. 939), the arguments informed voters that the measure excluded individuals currently serving a term for a violent felony offense. The proponents consistently argued as much. And although the opponents argued that the measure applied to inmates "convicted of many violent and horrible crimes" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58), the proponents specifically and unmistakably denied it, arguing that the measure did "not authorize parole for violent offenders" and that "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole" (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59, capitalization omitted).

Moreover, to the extent that these arguments conflicted, "we presume that the voters relied on the text of the measure." (*Gadlin*, *supra*, 10 Cal.5th at p. 940.) The measure's text reinforced the proponents' arguments as it made no mention of violent felony offenses, stating solely that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration after completing the full term for his

---

[7] *Brown v. Superior Court* (2016) 63 Cal.4th 335, 339 (*Brown*) involved whether amendments to Proposition 57 violated the Elections Code. When summarizing the amendments, the California Supreme Court stated, "The newly proposed constitutional provision also addresses parole suitability review. It would be significantly *more* restrictive in one way, because *it would apply only to prisoners convicted of nonviolent felonies*. It would be significantly less restrictive in another way, because it would apply to all prisoners regardless of their age at the time of the offense. It would also authorize [CDCR] to award credits for good behavior and rehabilitation." (*Brown*, *supra*, at p. 352, fn. omitted, second italics added; see *id.* at p. 353 [observing that Proposition 57 as amended would apply to inmates serving Three Strike sentences "so long as their offense was nonviolent"].)

or her primary offense."[8] (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141, italics omitted.) The clear implication from the measure's text, the Attorney General's official summary, the Legislative Analyst's analysis, and the ballot arguments is that inmates currently serving a term for a violent felony offense are excluded from nonviolent parole consideration. " 'We cannot presume that . . . the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet.' " (*Valencia*, *supra*, 3 Cal.5th at p. 364.)

Certainly, an uncodified section of Proposition 57 stated that in its enactment, the electorate's "purpose and intent" was to: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, *supra*, text of Prop. 57, § 2 p. 141.) And another uncodified section stated that the "act shall be liberally construed to effectuate its purposes." (*Id.*, § 9, p. 146.) Even so, to discern from the ballot materials an electoral intent to include in Proposition 57's nonviolent parole consideration scheme individuals currently convicted of nonviolent and violent felony offenses who are currently serving a term for a violent felony offense "would be imputing to voters an intent that could not reasonably have existed, where even the Attorney General and Legislative Analyst, in advising voters, apparently were unaware of that professed intent." (*Valencia*, *supra*, 3 Cal.5th at p. 375.) " ' "[I]n the case of a voters' initiative . . . we may not properly interpret the measure in a way that the electorate did

---

[8] Listing 15 offenses, opponents also argued that "[t]he authors of Proposition 57 claim it only applies to 'non-violent' crimes, but their poorly drafted measure deems the following crimes 'non-violent' and makes the perpetrators eligible for EARLY PAROLE." (Voter Information Guide, Gen. Elec., *supra*, argument against Prop. 57, p. 59.) However, the measure's text does not "deem" any offenses nonviolent or violent; it is entirely silent in that regard. (See Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 3, p. 141.)

16

not contemplate: the voters should get what they enacted, not more and not less." ' " (*Ibid.*, fn. omitted.) Based on Proposition 57's text and the ballot materials as a whole, voters clearly did not contemplate that inmates currently serving a term for a violent felony offense would be eligible for nonviolent parole consideration, and we should not interpret section 32 to the contrary. " 'The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Arias*, *supra*, 46 Cal.4th at p. 979.)

For these reasons, based on the principles articulated in *Gadlin* and *Valencia*, we determine that CDCR " ' " 'reasonably interpreted [its] mandate' " ' " (*Gadlin*, *supra*, 10 Cal.5th at p. 926) by adopting regulations that exclude from nonviolent parole consideration any inmate who is "currently serving a term of incarceration for a 'violent felony' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5); see *id.*, § 3491, subd. (a)). In other words, we conclude that the regulations are " ' "consistent and not in conflict with" ' " section 32. (*Gadlin*, *supra*, 10 Cal.5th at p. 926.)

## IV.    DISPOSITION

The petition for writ of habeas corpus is denied.

17

_____

BAMATTRE-MANOUKIAN, J.

I CONCUR:

_____

ELIA, J.

*In re Guice*
**H047989**

Greenwood, P.J., Dissenting:

I respectfully dissent.  The majority concludes the text of section 32(a)(1) is ambiguous and relies solely on selected ballot materials to infer the voters' intent.  This contravenes the first rule of statutory construction that the best indicator of intent is the text itself.  (*People v. Mentch* (2008) 45 Cal.4th 274, 282.)  That rule is particularly apt here because the text of section 32(a) expressly states its purposes:  "to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order."  We presume the electorate, which voted overwhelmingly for Proposition 57, intended to advance the purposes stated in the text.

To determine whether the challenged regulations are valid, we first ask whether the regulations are "consistent and not in conflict with" those purposes.  (*In re Gadlin* (2020) 10 Cal.5th 915, 926 (*Gadlin*).)  But the majority conducts no such analysis.  Rather, the majority bypasses that question and proceeds directly to the ballot materials, which the majority treats as dispositive.  I disagree with this approach to constitutional analysis, and I conclude the regulations are in direct conflict with the purposes stated in the text of section 32(a).

At issue is the phrase "[a]ny person convicted of a nonviolent felony offense" in section 32(a)(1).[1]  The majority argues the phrase is ambiguous because it is "silent regarding its application to individuals currently convicted of both nonviolent and violent felonies."  (Maj. Opn. at p. 7.)  I respectfully disagree.  The language is not silent in that application; basic syntax and logic compel the conclusion that it includes persons convicted of both violent and nonviolent felonies.  While there may be some ambiguity in what constitutes a "nonviolent felony offense," the parties all agree this phrase references the classification of violent felonies defined in Penal Code section 667.5, subdivision (c).

---

[1] I adopt the majority's use of "section 32" to refer to article I, section 32 of the California Constitution, "section 32(a)(1)" to specify subdivision (a)(1) of section 32, and so on.

Given that definition, the plain meaning of the phrase is unambiguous. To use a simple analogy, the phrase "any person with a right arm" unambiguously includes any person with both right and left arms. We would not say the phrase is "silent regarding its application" to such a person simply because the phrase does not mention left arms. The text of section 32 makes no mention of registered sex offenders either, but that did not render it ambiguous in that regard. (*Gadlin*, *supra*, 10 Cal.5th at p. 932 [section 32(a)(1) is not ambiguous concerning its scope regarding sex offenders].) For these reasons, I agree with *In re Mohammad* (2019) 42 Cal.App.5th 719. I would hold the plain meaning of section 32(a)(1) controls, mandating parole consideration to any person convicted of a nonviolent felony offense who has completed the full term for his or her primary offense.

The CDCR's regulations invert the meaning of the provision. Instead of granting parole consideration to persons convicted of a nonviolent felony offense, the regulations *eliminate* parole consideration based on a violent felony conviction. In its informal reply, the Attorney General indicated that the effect of these regulations was to reduce the number of eligible persons by tens of thousands. The regulations thereby alter the scope of section 32 drastically. " ' "Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations." ' [Citation.]" (*Gadlin*, *supra*, 10 Cal.5th at p. 926.)

The regulations also conflict with at least two of the three stated purposes of section 32(a). First, the regulations conflict with the constitutional directive to "avoid the release of prisoners by federal court order." (Section 32, subd. (a).) The 2009 federal court order to reduce the prisoner population was a response to overcrowding. (*Coleman v. Schwarzenegger* (E.D.Cal. 2009) 922 F.Supp.2d 882, 962.) By excluding tens of thousands of persons from parole consideration, the regulations reduce the number of persons who might be found suitable for parole. This would hinder the reduction of the prisoner population and *increase*—not *avoid*—the likelihood of federal court intervention. Second, the regulations conflict with the purpose of improving

2

rehabilitation.  By eliminating early parole consideration for tens of thousands of persons, the regulations remove a powerful incentive for those inmates to adhere to prison rules and engage in rehabilitative efforts.

The Attorney General argues that the regulations serve to enhance public safety, and he argues the regulations are presumptively valid in service of that purpose.  But the plain language of section 32 does not require the release of any prisoner who would threaten public safety; it only requires the CDCR to evaluate eligible prisoners.  The result under the plain language of section 32(a)(1) is that the CDCR will be required to review more inmates for parole consideration.  "A conclusion that the electorate made certain inmates eligible for parole consideration does not require the Department to find each of those inmates suitable for parole.  Indeed, many factors relevant to public safety may best be addressed through parole suitability determinations.  The Department is left with ample room to protect public safety by crafting the specific processes under which parole suitability is determined on a case-by-case basis." (*Gadlin*, *supra*, 10 Cal.5th at p. 934.)  In short, holding a parole hearing does not threaten public safety, and the absence of a hearing does not enhance it.

As to the ballot materials, I believe the majority errs by treating them as dispositive.  (See *Scher v. Burke* (2017) 3 Cal.5th 136, 149 [legislative history and circumstances are entitled to some weight but are not dispositive].)  "[W]hen an argument for or against a ballot measure conflicts with the measure's plain text, the text must govern the measure's interpretation." (*Gadlin*, *supra*, 10 Cal.5th at p. 942.)  Even assuming there is ambiguity in the phrase "any person convicted of a nonviolent felony offense," we should not resolve it by "relying solely on the ballot materials.  Rather, we presume that the voters relied on the text of the measure." (*Id.* at p. 940.)  Because the purposes of section 32 are set forth in its text, those purposes are the best indicator of voters' intent.

Furthermore, I do not believe the ballot materials taken as a whole support the majority's conclusion regarding voters' intent. The opponents made statements that are not supported by the text of the initiative in their argument against the proposition, including the claim that "Prop. 57 would authorize the IMMEDIATE RELEASE of thousands of dangerous criminals."[2] The majority instead emphasizes a sentence in the proponents' rebuttal, which stated that Proposition 57 "[d]oes not authorize parole for violent offenders." But this statement is entirely consistent with the plain meaning of section 32(a)(1). The plain language does *not* "authorize parole for violent offenders." The text does not "authorize parole"—it mandates *parole consideration* for persons convicted of nonviolent offenses, provided they have served the full term for their primary offense. The CDCR may determine on a case-by-case basis whether a person is still so violent as to be unsuitable for parole.

Guice qualifies for parole consideration under the plain language of section 32(a)(1). He is serving an aggregate term of 19 years four months, composed almost entirely of terms imposed for drug-related offenses. His primary offense was transporting a controlled substance, for which he received a ten-year term. There is no dispute that he has completed that term. But the CDCR regulations exclude him from parole consideration because his sentence includes a one-year term for robbery. As for whether Guice is a "violent offender," I would rely on the Board of Parole Hearings to determine whether he currently presents a danger to public safety making him unsuitable for parole, as the language of the initiative provides.

The CDCR's regulations categorically exclude Guice and prisoners like him from early parole consideration based on an impermissibly narrow regulation defining "nonviolent offenders." Because these regulations are inconsistent and in conflict with

_____

[2] That the voters approved Proposition 57 "despite these warnings" supports a conclusion that the voters' intent was congruent with the plain text of the proposition. (*Gadlin*, *supra*, 10 Cal.5th at p. 940.)

the plain language and purposes in the text of Section 32, I would grant relief, striking down the regulations and ordering the CDCR to evaluate Guice for early parole consideration.

_____
Greenwood, P.J.

*In re Guice*
H047989

Trial Court:                                    Monterey County Superior Court
                                                Superior Court Nos.:  SS100975A,
                                                SS110737B, SS130742A, 19HC000143


Trial Judge:                                    Hon. Timothy P. Roberts


Attorneys for Defendant and Petitioner:         Eric Weaver
Stephen Guice
                                                Sixth District Appellate Program


Attorney for Plaintiff and Respondent:          Xavier Becerra
The People                                      Attorney General of California
                                                Phillip J. Lindsay
                                                Senior Assistant Attorney General
                                                Amanda J. Murray
                                                Supervising Deputy Attorney General
                                                Andrew M. Gibson
                                                Deputy Attorney General
                                                Rachael A. Campbell
                                                Deputy Attorney General


*In re Guice*
**H047989**